**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Appellee,**

v.

**Michael D. BLAZEK, Appellant.**

No. 98–1770.

Supreme Court of Iowa.

March 24, 1999.

Timothy A. Lynch of Van Orsdel, Lynch & Rouse, L.C., Des Moines, for appellant.

Charles L. Harrington, Des Moines, for appellee.

Considered by LARSON, P.J., and LAVORATO, SNELL, TERNUS, and CADY, JJ.

LARSON, Justice.

 The Iowa Supreme Court Board of Professional Ethics and Conduct charged attorney Michael Blazek with violations of the Iowa Code of Professional Responsibility arising out of improper sexual contact with Blazek's eleven-year-old nephew. Our grievance commission concluded Blazek committed the violations and recommended a minimum three-year suspension. Blazek has appealed from the commission's recommendation, seeking a minimum suspension of only two years. We give respectful consideration to the commission's recommendation, but we are not bound by it. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sunleaf,* 588 N.W.2d 126, 126 (Iowa 1999). We must ultimately determine the appropriate discipline under the unique facts of each case. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Carr,* 588 N.W.2d 127, 129 (Iowa 1999). On our de novo review of the record under Court Rule 118.11, we adopt the findings of the commission but suspend Blazek's license with no possibility of reinstatement for two years.

## I. *Facts.*

Blazek has worked primarily as a sole practitioner with an emphasis on small business and corporate law since his admission to the bar in 1987. The commission found no evidence of prior ethics complaints or serious criminal charges against Blazek. During a family reunion on a cruise ship in June 1996, Blazek sexually assaulted his eleven-year-old nephew-by-marriage by fondling the boy's bare buttocks and genitals. Blazek ceased his improper touching when his nephew asked him to and apologized when confronted by his in-laws during the cruise. FBI agents questioned Blazek when the ship docked but did not arrest him. After returning to Des Moines, Blazek promptly sought counseling. Blazek had completed one hundred hours of therapy at the time of the commission's hearing and continues in treatment today.

In December 1997 Blazek pled guilty in federal court to a felony charge of knowingly engaging in sexual contact with a child under twelve, in violation of 18 U.S.C. § 2244(a)(1). The court agreed to reduce Blazek's punishment three levels under § 3E.1 of the federal sentencing guidelines, ultimately sentencing Blazek to twelve months in prison followed by three years of supervised release. The court also ordered Blazek to register as a sex offender if required by Iowa law and to pay $27,864.35 for his nephew's counseling.

Blazek's license was temporarily suspended pursuant to Court Rule 118.14 on March 7, 1997, and he has not practiced law since that time. He served his criminal sentence from May 1997 until May 1998 at the Sandstone correctional facility in Minnesota, where he received further counseling. Blazek has registered with the Iowa Sex Offender Registry pursuant to Iowa Code chapter 692A (1997). Blazek's marriage dissolved after the incident, and he is permitted to see his son under supervised visitation. Blazek is current on his child support obligation and has paid $7000 toward his restitution obligation.

The commission was favorably impressed with Blazek's candor and credibility during the hearing, observing that

> [Blazek] made no excuses for his behavior. He appeared to be genuinely remorseful for the harm his actions had done to his nephew and his family, and to his own family. He seemed to have some understanding of the circumstances which had led to his commission of the unlawful acts, and he expressed a commitment to his "safety plan," which he began working on in the summer of 1996, which involved controls designed to prevent a recurrence of such acts. In short, Respondent was a credible witness, and he struck the Commission as a person who had accepted responsibility for his actions and was sincerely trying to rehabilitate himself.

Blazek's clinical psychologist, Dr. Craig Rypma, testified on Blazek's behalf, and the commission found his testimony credible and helpful, as well. Dr. Rypma described Blazek as having an "adjustment reaction with disturbance of mood" and an "identity disturbance." Dr. Rypma reported Blazek was "extremely cooperative, compliant and remorseful" and believed the improper touching was an isolated incident based on his discussions with Blazek and a polygraph

exam. Dr. Rypma testified that, although statistics show one in four sex offenders reoffend and that he could not guarantee Blazek would not reoffend, he located Blazek on the "safe end" of the reoffense scale.

■ The board charged Blazek with violations of DR 1–102(A)(3) (engaging in illegal conduct involving moral turpitude) and (6) (engaging in conduct adversely reflecting on the fitness to practice law). The commission found the board proved the violations by clear and convincing evidence, given that Blazek admitted all the allegations in his answer. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lesyshen*, 585 N.W.2d 281, 283 (Iowa 1998) (describing the board's burden of proof as greater than that in a civil case but less than that in a criminal case). Further, Blazek's felony conviction is conclusive evidence that his license should be revoked or suspended. *See* Iowa Code § 602.10122; *see also Iowa Supreme. Ct. Bd. of Prof'l Ethics & Conduct v. Palmer*, 563 N.W.2d 634, 635 (Iowa 1997); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Marcucci*, 543 N.W.2d 879, 882 (Iowa 1996).

## II. *Discipline.*

■ We agree that Blazek's sexual assault violated DR 1–102(A)(3) and (6). *See Committee on Prof'l Ethics & Conduct v. Lindaman*, 449 N.W.2d 341, 342 (Iowa 1989) (holding attorney's sexual contact with eleven-year-old boy violated both DR 1–102(A)(3) and (6) and warranted license revocation). The appropriate disciplinary action is the more difficult issue in this case. We sanction ethical violations based upon the circumstances of each case, but in every case we are guided by the " 'nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the respondent's fitness to continue in the practice of law.' " *Carr*, 588 N.W.2d at 130 (quoting *Committee on Prof'l Ethics & Conduct v. Blomker*, 379 N.W.2d 19, 21 (Iowa 1985)). Disciplinary proceedings are not designed to punish criminal behavior. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Runge*, 588 N.W.2d 116, 118 (Iowa 1999).

■ Blazek's ability to practice law has not been called into question nor was the incident shown to have adversely affected any of Blazek's clients. Rather, this disciplinary proceeding presents a situation in which we are bound to sanction conduct that is unrelated to the practice of law but a violation of our ethical rules nonetheless. *See Marcucci*, 543 N.W.2d at 881 (reviewing cases of ethical violations unrelated to the practice of law and holding attorney's third conviction for operating a motor vehicle while intoxicated warranted six-month suspension).

Blazek urges us to consider the mitigating circumstances of his case in shaping the appropriate sanction. Blazek takes full responsibility for his behavior and argues his prompt acknowledgment of his impropriety to his in-laws and federal authorities allowed his nephew to seek immediate counseling and minimized the harmful impact to the extent possible. He also points out he sought counseling and treatment as soon as the cruise ended and anticipates continuing in therapy for the rest of his life. In conjunction with therapy, Blazek has developed a safety plan to insure he will not reoffend, including never being alone with a child and participating in support groups to monitor his behavior and moods.

The board notes we revoked the attorney's license in *Lindaman* and argues the recommended three-year suspension for Blazek is lenient in comparison. *Lindaman* involved a lawyer who was serving as the Floyd County magistrate when he was convicted of two counts of lascivious acts with an eleven-year-old boy. *Lindaman*, 449 N.W.2d at 341. Lindaman raised an affirmative defense that his heterosexual upbringing caused him to deny his homosexual identity. *Id.* at 342. This denial created "internal turmoil and confusion" that led him to commit the offenses, according to Lindaman. *Id.* We determined Lindaman's actions constituted moral turpitude under DR 1–102(A)(3) and affirmed the commission's recommendation to revoke his license because we found the violations to be "serious and dangerous to the public." *Id.* at 343.

We agree with Blazek that there are significant distinctions between his case and

*Lindaman.* Lindaman asserted an affirmative defense that we did not accept as relevant to the question of whether he committed an ethical violation. *Id.* at 342. Blazek has not tried to defend his improper actions and admits to the ethical violations. Further, he has taken significant steps toward rehabilitation and shows minimal risk of reoffense, unlike Lindaman. In *Tompkins* we recognized such steps as mitigating factors in fashioning the appropriate discipline. *See Committee on Prof'l Ethics & Conduct v. Tompkins,* 415 N.W.2d 620, 624 (Iowa 1987). *Tompkins* involved a county attorney who unlawfully entered over one hundred residences in search of women's undergarments to sexually gratify himself. *Id.* at 621. His psychiatrist and psychologist suggested Tompkins was a "recovered sexaholic," and we chose to suspend Tompkins' license for two years rather than revoke his license. *Id.* at 624. We stated:

> Our careful review of the record satisfies us that, though not cured, Tompkins has indeed recovered to the point that he probably does not pose a threat to the public. As long as he continues to practice the techniques he has learned to control his behavior, it seems unlikely that Tompkins will return to his old habits.... Tompkins, once caught, has not repeated the offensive behavior. Moreover, Tompkins has demonstrated a commitment to a lifelong term of psychiatric care to help him in his endeavor to avoid a relapse. Finally, as for deterrence, we are not convinced that revocation or a stringent sanction ..., in these circumstances, would deter lawyers with similar disorders. More likely, such a sanction would encourage these lawyers to hide their disorders rather than admit them and seek treatment.

*Id.*

We see similar mitigating factors in Blazek's case; he has not repeated the behavior, it appears it was an isolated incident, he sought psychological treatment immediately following the offense, he has demonstrated a commitment to continue his course of therapy, and he has a concrete plan to control a risk of reoffense in the future. We are satisfied Blazek has taken all appropriate steps

and no longer presents a significant risk to potential clients or the public. Further, we agree with Blazek that a longer suspension would discourage attorneys from seeking treatment and taking responsibility for similar actions.

Accordingly, we suspend Blazek's license indefinitely with no possibility of reinstatement for two years from the date of the temporary suspension. Upon application for reinstatement, Blazek shall have the burden of proving that (1) he has continued counseling and treatment through Dr. Rypma or other satisfactory counselors and therapists during the suspension period; (2) he has complied with all conditions of his federal parole, including restitution payments; and (3) his application for reinstatement includes current reports of two treating professionals, including Dr. Rypma, on Blazek's progress and his prognosis. In addition, Blazek will have to prove he has not practiced law during the suspension period and that he has met the requirements for client notification in Court Rule 118.18. Costs are assessed to Blazek pursuant to Court Rule 118.22.

**LICENSE SUSPENDED.**