144 P.3d 286 (2006)
In re the Matter of the DISCIPLINARY PROCEEDING AGAINST Stephen B. BLANCHARD, Bar No. 12294, an Attorney at Law.
No. 200,316-8.
Supreme Court of Washington, En Banc.
Argued June 6, 2006.
Decided October 12, 2006.
*287 Stephen Bruce Blanchard, Blanchard Law Offices, Edmonds, WA, pro se.
Kurt M. Bulmer, Attorney at Law, Seattle, WA, for Petitioner.
Natalea Skvir, Washington State Bar Association, Seattle, WA, for Respondent.
J.M. JOHNSON, J.
¶ 1 Stephen Blanchard appeals the Washington State Bar Association (WSBA) Disciplinary Board's (the Board) recommendation that he be suspended from the practice of law for one year. Mr. Blanchard does not dispute the findings of fact or conclusions of law. Instead, Mr. Blanchard argues that the length of the suspension is inappropriate. *288 Mr. Blanchard also makes a procedural argument that the Board erred when it failed to set forth any reasoning for amending the hearing officer's recommended suspension 30 daysin favor of an increased suspension of one year. Thus, he argues his due process rights were violated and we must remand to the Board in order for it to state its reasons for increasing the sentence.
¶ 2 Remand is unnecessary because we have plenary authority over disciplinary actions. Moreover, we find no violation of Mr. Blanchard's due process rights. However, we note that the Board erred when it failed to follow its own rules and did not set forth reasoning pursuant to ELC 11.12(e) when it amended the hearing officer's recommendation. Thus, we review Mr. Blanchard's case de novo.
¶ 3 After considering Mr. Blanchard's violations, aggravating and mitigating factors, and comparing his case with the facts of other cases, we conclude that Mr. Blanchard should be suspended for six months.

Facts and Procedure
I. Facts
¶ 4 Mr. Blanchard has been a licensed attorney in the state of Washington since May 17, 1982.
¶ 5 The facts giving rise to this disciplinary action arise from Mr. Blanchard's dealing on two cases: the Weiser matter and the Taft matter. The facts of these cases are not in dispute.
A. Weiser Matter
¶ 6 Charles and Elizabeth Weiser (a married couple) sought Mr. Blanchard's representation regarding loans they had made to Ms. Weiser's son, William Saunders. The loans totaled $187,592.87. The loans were consolidated into a single promissory note secured by deeds of trust on three pieces of property owned by William in Kingston, Washington.
¶ 7 In 1996 William filed chapter 7 bankruptcy and failed to make payments on the promissory note to Mr. and Ms. Weiser. Through the bankruptcy, two of the Kingston properties were sold and Mr. and Ms. Weiser received the proceeds. The third piece of property remained part of William's bankruptcy estate.
¶ 8 In January 1997 Mr. and Ms. Weiser asked Mr. Blanchard to represent them in collecting on the loan that William owed them regarding this third piece of property (Lot A). Mr. Blanchard said he would charge an hourly fee for this collection matter.
¶ 9 At the end of January 1997 Mr. Blanchard sent Mr. Weiser a $1,578.92 bill for fees relating to a prior representation. Mr. Weiser wrote Mr. Blanchard a check for $1,500, which contained the handwritten note "Advance on Legal Service." Clerk's Papers (CP) at 87. Mr. Blanchard deposited the check into his general account, not his trust account.
¶ 10 At the end of February 1997 Mr. Blanchard sent Mr. Weiser a $229.71 bill for additional fees. Mr. Blanchard does not have any record of having billed Mr. Weiser following this bill nor does he have any records for work performed on Mr. and Ms. Weiser's case following this bill.
¶ 11 In October 1998 Mr. Blanchard phoned Mr. and Ms. Weiser and requested $1,000 so that he could seek authorization for the sale of Lot A. Mr. and Ms. Weiser paid Mr. Blanchard $1,000 in order for him to sell Lot A. Mr. Blanchard deposited the $1,000 into his general account, not his trust account.
¶ 12 Mr. Blanchard did not pursue the foreclosure on Lot A.
¶ 13 Mr. Weiser died on April 6, 1999. Ms. Weiser and her other son, Ronald Saunders, met with Mr. Blanchard in August 1999 regarding collecting on the loan to William. Ms. Weiser also asked Mr. Blanchard for paperwork regarding the money that Mr. Weiser had paid him. Mr. Blanchard said he would send an accounting to her.
¶ 14 Mr. Blanchard did not make further contact with Ms. Weiser and did not provide an accounting or any paperwork regarding the money paid. Between September 1999 and January 2001 Ronald wrote Mr. Blanchard five letters, on behalf of Ms. Weiser, *289 requesting an accounting and a refund. Mr. Blanchard received all five of these letters; however, he failed to respond to any of them. Mr. Blanchard did not provide an accounting to Ronald or Ms. Weiser. Mr. Blanchard does not have any records to demonstrate that he earned the $770.29 difference that was paid in October 1998 in excess of the $229.71 billed. Mr. Blanchard did not refund any money to Ms. Weiser.
¶ 15 William's bankruptcy closed in March 2001 and Lot A, which did not sell during the bankruptcy, was distributed back to William.
¶ 16 Jeannette Cyphers, an attorney representing Ms. Weiser in Mr. Weiser's probate, agreed to assist Ms. Weiser in collecting on the loan to William. The outstanding principal balance of the loan was between $75,000 and $80,000. The promissory note and deed of trust was foreclosed, and Lot A was sold for $60,500 in December 2002.
¶ 17 In December 2001 Ms. Weiser filed a grievance against Mr. Blanchard with the WSBA. The WSBA referred Ms. Weiser to fee arbitration. Mr. Blanchard did not respond to Ms. Weiser's petition for fee arbitration, and she renewed her grievance in November 2002. The WSBA sent Mr. Blanchard several copies of the grievance, but Mr. Blanchard failed to respond. Finally, the WSBA served Mr. Blanchard with a subpoena duces tecum, and he appeared for deposition on March 12, 2003.
B. Taft Matter
¶ 18 Norman Taft hired Mr. Blanchard to represent him in his dissolution action.
¶ 19 Mr. Taft and Gay Westmoreland married on August 4, 2001. On August 23, 2002, Ms. Westmoreland told Mr. Taft that she wanted a divorceMr. Taft was away on business at the time. Mr. Taft made arrangements for a friend, Jeff Madsen, to retrieve his personal possessions from the residence where he and Ms. Westmoreland had lived. Mr. Madsen retrieved some of Mr. Taft's property; however, Ms. Westmoreland refused to allow Mr. Madsen to pick up many of Mr. Taft's personal possessions, including a large screen television and family heirlooms.
¶ 20 In August 2002 Mr. Taft hired Mr. Blanchard to represent him in the dissolution. At a meeting on August 25, 2002, Mr. Taft informed Mr. Blanchard that he wished the dissolution to move along as quickly as possible and that he wanted the rest of his belongings from Ms. Westmoreland. Mr. Taft and Ms. Westmoreland had no children together; thus, the primary issue in the dissolution was the division of property.
¶ 21 Mr. Blanchard and Mr. Taft agreed that Mr. Blanchard would charge an hourly fee ($175 per hour); however, no written fee agreement was executed. Mr. Taft paid $750 to Mr. Blanchard on August 27, 2002.
¶ 22 On August 29, 2002, Mr. Taft signed dissolution pleadings prepared by Mr. Blanchard. On the same day, Mr. Blanchard filed a summons and petition for dissolution on behalf of Mr. Taft in Snohomish County Superior Court. However, the petition did not contain Mr. Taft's signature as required by law. Mr. Blanchard never filed a petition that was signed by Mr. Taft.
¶ 23 Ms. Westmoreland's attorney, Ms. Hendricks, informed Mr. Blanchard that Ms. Westmoreland would not accept service of the summons and petition and that he needed to properly serve her client. On October 8, 2002, Ms. Hendricks sent Mr. Blanchard a letter stating, "just a reminder that my client has yet to receive service in this case." CP at 95. On November 5, 2002, Ms. Hendricks sent another letter to Mr. Blanchard stating, "please personally serve my client with the necessary papers or I will move to have this action dismissed at your client's expense." CP at 95. On December 20, 2002, Ms. Hendricks sent a third letter to Mr. Blanchard again requesting that her client be served so that the matter could continue. Mr. Blanchard did not serve Ms. Westmoreland.
¶ 24 Mr. Taft repeatedly informed Mr. Blanchard that he wanted the case to move forward quickly and that he would not put up with stalling tactics. Mr. Taft also repeatedly asked Mr. Blanchard to take action to secure the return of certain items of personal property that remained in Ms. Westmoreland's possession. Mr. Blanchard did not file *290 a motion for the return of Mr. Taft's personal property.
¶ 25 Around October 2002 Mr. Blanchard asked Mr. Taft to pay him $1,500he did not provide Mr. Taft with a billing statement. Mr. Taft thought the money was for anticipated fees and costs in deposing Ms. Westmoreland. Mr. Taft paid Mr. Blanchard $1,500. Mr. Blanchard deposited the money into his general account, not his trust account.
¶ 26 Mr. Blanchard scheduled a deposition for Ms. Westmoreland for October 2002, but it was continued. Mr. Blanchard rescheduled the deposition for December. Ms. Hendricks informed Mr. Blanchard that she would not allow Ms. Westmoreland to be deposed until she was served with the summons and petition.
¶ 27 When Mr. Blanchard informed Mr. Taft that the December deposition had been canceled, Mr. Taft learned for the first time that the summons and petition had never been served.
¶ 28 Mr. Taft sought the help of another attorney, Paula McManus. Mr. Taft and Ms. McManus reviewed Mr. Taft's court file and Ms. McManus noticed that the petition for dissolution lacked Mr. Taft's signaturethis was the first time that Mr. Taft learned that the petition was unsigned and invalid.
¶ 29 On January 3, 2003, Mr. Taft sent a letter to Mr. Blanchard informing him that he no longer wished to use his services and requesting a refund. Mr. Blanchard originally indicated that he would give Mr. Taft a refund; however, Mr. Blanchard later informed Mr. Taft that he would not refund any money.[1]
¶ 30 On January 21, 2003, Mr. Taft filed a grievance against Mr. Blanchard with the WSBA. Mr. Blanchard failed to respond to Mr. Taft's grievance. The WSBA issued a subpoena duces tecum requiring Mr. Blanchard to appear on April 16, 2003 for a deposition regarding Mr. Taft's grievance. Mr. Blanchard requested and obtained a continuance until May 1, 2003.
¶ 31 Following the subpoena by the WSBA, on April 30, 2003, Mr. Blanchard printed a statement of the work he performed on Mr. Taft's dissolution from Ms. Westmoreland; however, Mr. Blanchard never sent Mr. Taft any invoices.
II. Procedure
A. Charges
¶ 32 On November 13, 2003, the disciplinary counsel of the WSBA filed a formal complaint against Mr. Blanchard.[2] The complaint set forth 10 counts against Mr. Blanchard. The charges against Mr. Blanchard follow:
Count 1: violation of RPC 1.14(a) for failing to deposit Mr. Weiser's advanced fees and/or costs into his trust account.
Count 2: violation of RPC 1.4 and/or 1.14(b) for failing to maintain complete records and/or failing to render appropriate accounts to Mr. and/or Ms. Weiser.
Count 3: violation of RPC 1.5(a), 1.14(b), and/or 1.15(d) for failing to refund any money to Ms. Weiser.
Count 4: violation of RPC 8.4(1) (ELC 1.5 and 5.3) for failing to cooperate with the investigation of Ms. Weiser's grievance.
Count 5: violation of RPC 1.3 and/or 3.2 for failing to properly file Petition for Dissolution, failing to serve the Summons and Petition for Dissolution on Ms. Westmoreland, and/or by failing to pursue the return of Mr. Taft's personal property.
Count 6: violation of RPC 1.4 for failing to keep Mr. Taft reasonably informed regarding the status of his case and/or failing to explain matters to the extent reasonably necessary for Mr. Taft to make informed decisions.

*291 Count 7: violation of RPC 1.14(a) for failing to deposit Mr. Taft's payment of $1,500 into his trust account.
Count 8: violation of RPC 1.4 and/or 1.14(b) for failing to keep Mr. Taft informed regarding the status of his account and/or by failing to render appropriate accounts.
Count 9: violation of RPC 1.5(a), 1.14(b), and/or 1.15(d) for failing to refund any money to Mr. Taft.
Count 10: violation of RPC 8.4(1) (ELC 1.5 and 5.3) for failing to cooperate with the investigation of Mr. Taft's grievance.
CP at 17-24.
B. Hearing
¶ 33 On December 6 and 7, 2004, the hearing officer heard testimony and argument in this matter. Following the presentation of evidence, the WSBA asked the hearing officer to suspend Mr. Blanchard for a minimum of six months.
¶ 34 On January 26, 2005, the hearing officer entered findings of fact, conclusions of law, and a recommendation. The hearing officer found that counts 1-6, 8, and 10 were proved by a clear preponderance of the evidence (the WSBA withdrew counts 7 and 9 and thus the hearing officer dismissed them).
¶ 35 The hearing officer noted that the presumptive sanction was suspension. The hearing officer found the following aggravating factors applied: prior disciplinary offenses, multiple offenses, vulnerability of victim (Ms. Weiser), substantial experience in the practice of law, and indifference to making restitution. The hearing officer also found the following mitigating factors applied: absence of dishonest or selfish motive, efforts to rectify consequences of misconduct, and remorse. CP at 107-08.
¶ 36 The hearing officer recommended that Mr. Blanchard be suspended for 30 days and be ordered to pay $770.29 restitution to Ms. Weiser. CP at 108.
C. Disciplinary Board
¶ 37 The Board adopted the hearing officer's findings of fact, conclusions of law, and recommendation with the following modification:
The sanction recommendation is increased to a 1 year suspension. The Board recommends that the Court require Mr. Blanchard to make the $770 restitution payment within 30 days of the Court's order.
Decision Papers at 3. Ten members of the Board voted in favor of the above order. Two members disagreed and instead would have increased the sanction to a two year suspension. The order (one page in length) does not reflect any reasoning behind the increased sanction.

Analysis
¶ 38 This court is the ultimate authority for attorney discipline in Washington. In re Disciplinary Proceeding Against Miller, 149 Wash.2d 262, 276, 66 P.3d 1069 (2003). We accept unchallenged findings of fact as verities on appeal. In re Disciplinary Proceeding Against Whitney, 155 Wash.2d 451, 461, 120 P.3d 550 (2005). We review conclusions of law de novo and require that they be supported by the findings of fact. Id.
1. What is the proper remedy when the Board fails to state its reasons for amending the hearing officer's recommendation?
¶ 39 The Rules for Enforcement of Lawyer Conduct (ELC) require the Board to issue a written opinion or order and state the reasons for its decision if it amends the hearing officer's recommendation. ELC 11.12(e) provides:
The Board must issue a written order or opinion. If the Board amends, modifies, or reverses any finding, conclusion, or recommendation of the hearing officer or panel, the Board must state the reasons for its decision in a written order or opinion.
Pursuant to this rule, the Board was obligated to state its reasons for amending the hearing officer's recommendation, and it did not.
¶ 40 Due to this error, Mr. Blanchard argues that we should remand the case to the Board and instruct it to issue reasons for its amendment. Alternatively, Mr. Blanchard *292 argues that we should review the case pursuant to our plenary authority but should give no weight to the Board's decision because it is in violation of the rules.
¶ 41 The WSBA maintains that remand is not required because we have plenary authority in attorney discipline cases. The WSBA also notes that the factual findings are unchallenged, and this court reviews conclusions of law de novo.
¶ 42 We possess plenary power regarding attorney disciplinary matters:
The Washington Supreme Court has exclusive responsibility in the state to administer the lawyer discipline and disability system and has inherent power to maintain appropriate standards of professional conduct and to dispose of individual cases of lawyer discipline and disability. Persons carrying out the functions set forth in these rules act under the Supreme Court's authority.
ELC 2.1; In re Disciplinary Proceeding Against Poole, 156 Wash.2d 196, 208, 125 P.3d 954 (2006); In re Disciplinary Proceeding Against Vanderbeek, 153 Wash.2d 64, 73, 101 P.3d 88 (2004) (this court used its plenary power under ELC 2.1 to amend a hearing officer's conclusions of law, which contained a typographical error).
¶ 43 Because this court is the ultimate authority for attorney discipline matters, we may review the Board's decision notwithstanding its lack of reasoning.
¶ 44 ELC 12.2 also supports this conclusion. ELC 12.2 sets forth the methods for seeking review of the Board's decisions review as a matter of right and discretionary review. However, the rule then states: "This rule does not affect the Court's power to review any Board decision recommending suspension or disbarment and to exercise its inherent and exclusive jurisdiction over the lawyer discipline and disability system." (Emphasis added.) Because this court may review "any board decision," this court may review the current board decision even though the Board failed to explain its reasoning. Remand is unnecessary.
¶ 45 However, we must determine what, if any, weight we give to the Board's recommendation. We review conclusions of law de novo, thus the Board is entitled no deference in that determination. And "[w]hile we `do [] not lightly depart from the Board's recommendation,' we are `not bound by it.'" In re Disciplinary Proceeding Against Haley, 156 Wash.2d 324, 333, 126 P.3d 1262 (2006) (quoting In re Disciplinary Proceeding Against Tasker, 141 Wash.2d 557, 565, 9 P.3d 822 (2000)). Moreover, the "ultimate responsibility for determining the nature of discipline nevertheless rests with this court." In re Disciplinary Proceeding Against Johnson, 118 Wash.2d 693, 703, 826 P.2d 186 (1992). Thus, we are not bound by the Board's recommended sanction, and we would be amiss to follow it because it gave no reasoning and as such we cannot determine whether the reasoning supports the Board's one year suspension.
¶ 46 Lastly, Mr. Blanchard argues that the Board's failure to state its reasons for increasing his sanction violated his due process rights because he is without notice as to why the Board made its decision. The WSBA argues that Mr. Blanchard was notified of the charges against him and received a full evidentiary hearing and thus received due process.[3]
¶ 47 An attorney has a due process right to be notified of clear and specific charges and to be afforded an opportunity to anticipate, prepare, and present a defense. In re Disciplinary Proceeding Against Romero, 152 Wash.2d 124, 136-37, 94 P.3d 939 (2004).
¶ 48 Mr. Blanchard's due process rights were not violated. He was notified of the charges against him and received a full hearing. Moreover, Mr. Blanchard has not been prejudiced by the Board's err because he was able to appeal the decision to this court, and we are reviewing his case pursuant to our plenary authority.
*293 2. What is the proper sanction for Mr. Blanchard's violations of the Rules of Professional Conduct?
¶ 49 Mr. Blanchard argues that the 30 day suspension was appropriate and the Board erred when it increased the suspension to one year. Mr. Blanchard also argues that the hearing officer and the Board erred when they found the aggravating factors of noncooperation into the investigation, vulnerable victim, and indifference to restitution.
¶ 50 The WSBA maintains that a one year suspension is appropriate for Mr. Blanchard. The WSBA also argues that the hearing officer incorrectly found the mitigating factors of remorse and timely efforts to make restitution.
¶ 51 The American Bar Association's Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) (ABA Sanctions) guides our determination of appropriate sanctions in bar disciplinary cases. Haley, 156 Wash.2d at 339, 126 P.3d 1262. First, we determine the presumptive sanction based on the ethical duty violated, the attorney's mental state, and the extent of actual or potential harm caused by the conduct. Id. Second, we consider aggravating and mitigating factors, which may alter the presumptive sanction. Id.
¶ 52 The ABA has established guidelines for determining when disbarment, suspension, reprimand, or admonition are appropriate. Here, Mr. Blanchard's violations primarily involved a lack of diligence. For a lack of diligence, the ABA recommends suspension when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or a lawyer engages in a pattern of neglect and causes injury or potential injury to the client.
ABA Standards std. 4.42, at 33. Mr. Blanchard failed to expedite litigation, failed to keep clients fully informed, and failed to return unearned fees causing injury and potential injury. Thus, suspension is the presumptive sanction for Mr. Blanchard.
¶ 53 According to the ABA, suspension should generally be for a period of time equal to or greater than six months. ABA Standards std. 2.3, at 20-21. However, the length of the suspension is also affected by aggravating and/or mitigating factors. Mr. Blanchard challenges several of the aggravating factors found by the hearing officer: vulnerability of victim (Ms. Weiser) and indifference to making restitution.[4]
¶ 54 The hearing officer found vulnerability of victim because "Ms. Weiser is an elderly widow who suffers from health problems." CP at 107. However, "clients unfamiliar with the legal system, and clients who have cultural and language barriers, are not vulnerable victims absent a showing of physical or mental disability or other characteristic that renders them `particularly vulnerable.'" In re Disciplinary Proceeding Against Christopher, 153 Wash.2d 669, 682, 105 P.3d 976 (2005) (citing In re Disciplinary Proceeding Against Anschell, 149 Wash.2d 484, 514, 69 P.3d 844 (2003) (immigration client with a language barrier who was trusting and completely dependent on attorney for legal advice was not a vulnerable victim)). The hearing officer did not find that Ms. Weiser had a physical or mental disability. Thus, there is no evidence that Ms. Weiser was "particularly vulnerable." Moreover, Ms. Weiser's son, Ronald, accompanied and assisted Ms. Weiser in her dealings with Mr. Blanchard. Thus, the hearing officer incorrectly used vulnerability of victim as an aggravator.
¶ 55 The hearing officer noted that Mr. Blanchard "has not refunded any money to Ms. Weiser" and thus applied the aggravator of indifference to making restitution. CP at 107. Mr. Blanchard has not denied that he retained an unearned portion of Ms. Weiser's fee even after his services were terminated. Thus, the hearing officer properly found the aggravator of indifference to making restitution.
*294 ¶ 56 The hearing officer found the mitigating factor of remorse because Mr. Blanchard expressed remorse during the disciplinary hearing. At the hearing, Mr. Blanchard stated that he was "very sorry that I basically just stuck my head in the sand on two clients." Tr. of Proceedings (Dec. 7, 2004) at 270. Before the Board, Mr. Blanchard again expressed remorse stating, "I want the Board to realize how sorry I am about being here and the fact of what gave rise to this action." Tr. of Proceedings (Sept. 16, 2005) at 4. These admissions are sufficient to support the hearing officer's finding of remorse.
¶ 57 The hearing officer also found the mitigating factor of "efforts to rectify consequences of misconduct ([Mr. Blanchard] is trying to change his billing practices to provide timely billings to clients)." CP at 107-08. Mr. Blanchard admitted that he was a poor bill keeper and sought assistance with his billing. However, Mr. Blanchard did not actually return the money owed to Ms. Weiser. Thus, while he was making efforts to change his billing practices, he was not actually making efforts to rectify the consequences of his misconduct. Thus, the hearing officer improperly found the mitigating factor of efforts to rectify the consequences of misconduct.
¶ 58 Therefore, the aggravating and mitigating factors that we must balance in determining Mr. Blanchard's sanction are the aggravating factors of prior disciplinary offenses, multiple offenses, substantial experience in the practice of law, indifference to making restitution, and the mitigating factors of remorse and absence of dishonest or selfish motive.
¶ 59 Having determined the applicable mitigating and aggravating factors, we now must compare the facts of Mr. Blanchard's case with the facts of other cases for consistency. We are committed to consistency in attorney discipline cases. Johnson, 118 Wash.2d at 704, 826 P.2d 186. We attempt to impose sanctions that are roughly proportionate to sanctions imposed in similar situations or for analogous levels of culpability. In re Disciplinary Proceeding Against Gillingham, 126 Wash.2d 454, 469, 896 P.2d 656 (1995).
¶ 60 In In re Disciplinary Proceeding Against Burtch, 112 Wash.2d 19, 770 P.2d 174 (1989), this court imposed a 45 day suspension against attorney Jack Burtch, who committed similar violations to those committed by Mr. Blanchard. Mr. Burtch and Mr. Blanchard both lacked diligence and failed to expedite litigation, failed to keep the client fully informed, failed to return unearned fees, and failed to cooperate with a disciplinary investigation. See id. at 20, 770 P.2d 174. Specifically, in Burtch, the findings and conclusions established:
(1) three violations of RPC 1.5(b) (failure to communicate fees); (2) six violations of RPC 1.3 and 3.2 (lack of diligence and failure to expedite litigation); (3) two violations of RPC 1.4 (failure to keep client fully informed); (4) two violations of RPC 1.15(d) (failure to return client documents and unearned fees); (5) one violation of RLD 13.3 (failure to timely file trust account declaration); and (6) one violation of RLD 2.8 (failure to cooperate with disciplinary investigation).
Id. Based on these findings, the hearing officer recommended a reprimand and a one-year probation, but the Board recommended a 90 day suspension and a two-year probation. Id. While this court agreed that the 90 day suspension imposed by the Board was justified, this court specifically chose not to follow the recommendation of the Board and instead imposed a lesser suspension of 45 days. Id. at 28, 770 P.2d 174. This court found six aggravating factors and seven mitigating factors but noted that the "personal and emotional mitigating facts justify more leniency than we otherwise would be inclined to grant." Id. While in Mr. Blanchard's case we have not found any "personal and emotional mitigating facts," the Burtch case is a useful comparison because Burtch and Mr. Blanchard committed very similar violations.
¶ 61 In In re Disciplinary Proceeding Against Cohen, 149 Wash.2d 323, 67 P.3d 1086 (2003), this court imposed a six month suspension when an attorney failed to prepare and file a substantive response to a summary judgment motion, failed to timely reply to a court order, failed to keep his clients informed of the status of their case, *295 and billed his clients for an appeal that stemmed from his misconduct. This court found that Cohen lacked diligence, failed to communicate with clients, and failed to charge reasonable fees. Id. at 334-37, 67 P.3d 1086. This court also found five aggravating factors and zero mitigating factors, yet still determined that a six month suspension was appropriate. Id. at 339-42, 67 P.3d 1086.
¶ 62 Cohen's failures are similar to the failures of Mr. Blanchard, who also lacked diligence, failed to communicate with clients, and failed to keep accurate billing. Moreover, similar to Mr. Blanchard's case, Cohen had more aggravating factors than mitigating factors (in fact five aggravating factors balanced with zero mitigating factors), but this court balanced all of the facts of the case and still determined that a six month suspension was appropriate. Thus, the six month suspension imposed in Cohen is also instructive in determining the appropriate sanction for Mr. Blanchard.
¶ 63 Mr. Blanchard's conduct, in sum, amounted to failing to deposit advanced fees into a trust account, failing to maintain and render complete records and accounts, failing to keep clients reasonably informed, failing to refund money, and failing to cooperate with the grievance investigation.
¶ 64 Considering the aggravating and mitigating factors and comparing these RPC violations with the violations in the above cases and their respective sanctions, we impose a six month suspension and order Mr. Blanchard to pay $770.29 restitution to Ms. Weiser.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, Justice CHARLES W. JOHNSON, Justice SUSAN OWENS, ELAINE HOUGHTON, Justice Pro Tem.
FAIRHURST, J. (dissenting).
¶ 65 Attorney Stephen Blanchard engaged in eight counts of misconduct including failure to deposit a client's fees into a trust fund, failure to refund unearned client money, and failure to cooperate with a disciplinary investigation. The Washington State Bar Association (WSBA) Disciplinary Board (Board), having adopted without change the hearing officer's findings of fact and conclusions of law, recommended a sanction of one-year suspension. In light of the facts, the Board clearly thought a 30-day suspension was too lenient as does each member of this court. Ten board members thought the sanction should be a one-year suspension and two thought it should be a two-year suspension. The Board erred in not specifically stating its reasons for amending the hearing officer's recommendation. ELC 11.12(e). Still, we have previously noted that "`[w]e should not lightly depart from recommendations shaped by th[e] experience and perspective'" of the Board. In re Disciplinary Proceeding Against Boelter, 139 Wash.2d 81, 98, 985 P.2d 328 (1999) (quoting In re Disciplinary Proceeding Against Noble, 100 Wash.2d 88, 94, 667 P.2d 608 (1983)). Because the Board's unique position in these proceedings makes it the "`only body to hear the full range of disciplinary matters,'" Boelter, 139 Wash.2d at 98, 985 P.2d 328 (quoting Noble, 100 Wash.2d at 94, 667 P.2d 608), we have previously adopted the Board's recommendation even where the Board has neglected to provide written findings. Id. at 107, 667 P.2d 608. Based on the record, I see no reason to deviate from the Board's recommended one-year suspension.
¶ 66 The American Bar Association's Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) (Standards) governs our inquiry. In re Disciplinary Proceeding Against Poole, 156 Wash.2d 196, 220, 125 P.3d 954 (2006). Under the Standards, we determine the presumptive sanction based on the ethical duty violated by the lawyer, the lawyer's mental state, and actual or potential injury caused by the misconduct. In re Disciplinary Proceeding Against Cohen, 150 Wash.2d 744, 758, 82 P.3d 224 (2004) (Cohen II) (citing In re Disciplinary Proceeding Against Halverson, 140 Wash.2d 475, 492, 998 P.2d 833 (2000)). The majority concludes that this inquiry yields a presumptive sanction of suspension. Majority at 293. Because Mr. Blanchard does not dispute the findings of fact or conclusions of law adopted by the Board, I agree with the majority regarding this presumptive sanction. However, I would reach a different result based on our remaining *296 considerations: (1) the aggravating and mitigating factors, (2) the degree of unanimity among the Board, and (3) the proportionality of the sanction to sanctions imposed for similar conduct. Cohen II, 150 Wash.2d at 758, 82 P.3d 224 (citing Halverson, 140 Wash.2d at 492, 998 P.2d 833). Because I would find that the aggravating factors outweigh the mitigating factors, that all 12 members of the Board found at least a one-year sanction to be appropriate, and that the Board's recommended sanction does not depart significantly from sanctions imposed in similar cases, I would uphold the Board's recommendation.
1. Aggravating and mitigating factors
¶ 67 A six-month suspension is the accepted minimum sanction, appropriate in cases where there are no aggravating factors and some mitigating factors or where mitigating factors "`clearly outweigh'" aggravating factors. Cohen II, 150 Wash.2d at 762, 82 P.3d 224 (quoting In re Disciplinary Proceeding Against Cohen, 149 Wash.2d 323, 339, 67 P.3d 1086 (2003) (Cohen I)). A suspension above the minimum may be appropriate where the aggravating factors outweigh the mitigating factors. Id. The majority finds four aggravating factorsprior disciplinary offenses, multiple offenses, substantial practice in the law, and indifference to making restitutioncoupled with two mitigating factors-absence of dishonest or selfish motive and remorse. Majority at 294. Because I would find that the four aggravating factors clearly outweigh the two mitigating factors, I would hold that a sanction that departs from the recommended minimum suspension is warranted.
2. Degree of unanimity
¶ 68 We also consider the agreement among the board members and hesitate to alter the recommendation of the Board given a high degree of unanimity. Cohen II, 150 Wash.2d at 763, 82 P.3d 224 (upholding recommendation where Board voted 11 to 1 in favor of a one-year suspension). Though the majority does not consider unanimity, the Board voted 10 to 2 in favor of a one-year suspension, with two dissenting members voting in favor of a longer suspension. In effect, a unanimous Board recommended at least a one-year suspension. As the Board was the only body exposed to all of the disciplinary matters, I would uphold the recommendation. See Boelter, 139 Wash.2d at 98, 985 P.2d 328 (citing Noble, 100 Wash.2d at 94, 667 P.2d 608).
3. Proportionality
¶ 69 In addition, we "generally adopt the Board's recommended sanction unless the sanction departs significantly from sanctions imposed in other cases." In re Disciplinary Proceeding Against Haley, 156 Wash.2d 324, 339, 126 P.3d 1262 (2006) (emphasis added) (citing In re Disciplinary Proceeding Against Kuvara, 149 Wash.2d 237, 259, 66 P.3d 1057 (2003)). The "attorney facing discipline bears the burden of bringing cases to the court's attention that demonstrate the disproportionality of the sanction imposed." Cohen II, 150 Wash.2d at 763, 82 P.3d 224 (citing In re Disciplinary Proceeding Against Kagele, 149 Wash.2d 793, 821, 72 P.3d 1067 (2003)).
¶ 70 To meet his burden, Mr. Blanchard points to several cases in which we imposed 60-day suspensions. None of these cases is analogous to the case before us. Blanchard first relies on In re Disciplinary Proceeding Against Lopez, in which we imposed a 60-day suspension where the attorney failed to file an opening brief, failed to take reasonable steps to protect a client's interests upon termination of his representation, and failed to timely respond to a show cause order. 153 Wash.2d 570, 597, 106 P.3d 221 (2005). Lopez is not instructive here. First, we imposed a 60-day suspension, but did so on the recommendation of a nearly unanimous Board. Id. at 581, 106 P.3d 221. We also specifically noted that based on the aggravating and mitigating factors, the "60-day suspension was lenient." Id. at 596 n. 11, 106 P.3d 221. Furthermore, whereas Lopez involved three counts of misconduct, only one of which warranted suspension, six of the eight counts against Mr. Blanchard hold a presumptive sanction of suspension. Id. at 595, 106 P.3d 221; Answering Br. of WSBA, App. A (Findings of Fact, Conclusions of *297 Law and Hearing Officer's Recommendation (FOF and COL)), at 22-24. Next, Mr. Blanchard cites In re Disciplinary Proceeding Against Longacre, in which we imposed a 60-day suspension based on violation of the duty to provide diligent and competent representation, failure to communicate with a client, and violation of the duty to refrain from conduct prejudicial to the administration of justice. 155 Wash.2d 723, 740-42, 122 P.3d 710 (2005). Mr. Blanchard's reliance is again misplaced. In Longacre, unlike here, the presumptive sanction for each count was reprimand. Id. at 746, 122 P.3d 710. Finally, Mr. Blanchard cites In re Disciplinary Proceeding Against Carmick, in which we imposed a 60-day suspension where the attorney had misrepresented an ex parte order to the court and negotiated directly with an adverse party represented by counsel. 146 Wash.2d 582, 600-01, 48 P.3d 311 (2002). But in Carmick, unlike here, only one count of misconduct warranted a presumptive suspension. Id. at 604, 48 P.3d 311. Because Mr. Blanchard has not directed our attention to cases which would demonstrate disproportionality, I would uphold the Board's recommended sanction.
¶ 71 Without addressing whether Mr. Blanchard has met his burden, the majority cites cases in which we imposed suspensions of less than one year as evidence of the disproportionality of the Board's recommendation. Majority at 294-95. Like the cases cited by Mr. Blanchard, the cases cited by the majority are not instructive here. The majority first relies on In re Disciplinary Proceeding Against Burtch, 112 Wash.2d 19, 26-28, 770 P.2d 174 (1989), where we imposed a 45-day suspension based on a pattern of neglect, failure to communicate with clients, failure to properly handle fee arrangements, lack of diligence, violation of trust account requirements, and failure to cooperate with a WSBA investigation. While the majority correctly notes that Burtch involved violations similar to those committed by Mr. Blanchard, majority at 294, that case differs significantly from the case before us. In Burtch, we balanced six aggravating factors against seven mitigating factors, specifically finding that attorney Burtch's personal and emotional problems constituted a "major and decisive mitigating factor" justifying more leniency than we would usually show. Burtch, 112 Wash.2d at 28, 770 P.2d 174. Because the aggravating factors in the case before us outweigh the mitigating factors, and because the majority has not identified such a "decisive mitigating factor" here, I find the comparison to Burtch misplaced.[1] Next, the majority relies on Cohen I, 149 Wash.2d at 327, 67 P.3d 1086, where we imposed a six-month suspension upon finding that attorney Cohen failed to respond to a summary judgment motion, failed to timely reply to a court order, failed to keep his clients informed of the progress of their case, and billed his clients for an appeal that stemmed from his misconduct. While the majority is correct in noting that, like in the case before us, the aggravating factors in Cohen I greatly outweighed the mitigating factors, majority at 295, the majority overlooks the fact that in Cohen I we specifically acted to uphold a unanimous decision of the Board below. Cohen I, 149 Wash.2d at 330, 67 P.3d 1086. To the contrary, here the majority would reverse a nearly unanimous Board.
¶ 72 While I would hold that Mr. Blanchard has not met his burden of demonstrating disproportionality, several of our cases nonetheless illustrate the proportionality of a one-year suspension. In Kagele, we upheld a one-year suspension where the attorney committed various violations warranting suspension, including three violations of diligence, four violations of communication, and one violation of failure to abide by a client's decision. 149 Wash.2d at 818, 72 P.3d 1067. Finding five aggravating factors and three mitigating factors, and based on an 8 to 1 board recommendation, we upheld the one-year *298 suspension. Id. at 821-22, 72 P.3d 1067. In Cohen II, we upheld a one-year suspension where attorney Cohen failed to diligently pursue his client's case or expedite the litigation, failed to communicate with his client, and improperly withdrew from the case. 150 Wash.2d at 755-57, 82 P.3d 224. In upholding an 11 to 1 board recommendation, we found suspension above the minimum six months appropriate because, like here, aggravating factors, including prior disciplinary offenses, outweighed mitigating factors. Id. at 762-63, 82 P.3d 224. In In re Disciplinary Proceeding Against DeRuiz, we imposed two consecutive six-month suspensions where attorney DeRuiz, similar to Mr. Blanchard, failed to communicate with clients, failed to refund unreasonable fees, and failed to cooperate with grievance proceedings against him. 152 Wash.2d 558, 562, 99 P.3d 881 (2004). Finding that aggravating factors far outweighed mitigating factors, we upheld the Board's unanimous decision and concluded that the suspensions should run consecutively for a total of one year. Id. at 581-83, 99 P.3d 881. Finally, we have found one-year and two-year suspensions warranted in light of the nature of the harm caused coupled with prior disciplinary offenses. Cohen II, 150 Wash.2d at 764, 82 P.3d 224 (citing In re Disciplinary Proceeding Against Anschell (Anschell I), 141 Wash.2d 593, 618, 9 P.3d 193 (2000)). Mr. Blanchard caused both Elizabeth Weiser and Norman Taft actual harm by delaying resolution of legal claims. Furthermore, Mr. Blanchard was censured for almost identical behavior in 1998. FOF and COL at 24. The harm caused, coupled with past disciplinary offenses, justifies a one-year suspension.
¶ 73 We have previously been willing to impose sanctions above the presumptive minimum where attorneys engage in multiple rules violations. Longacre, 155 Wash.2d at 746, 122 P.3d 710. We have done so in light of the fact that "[t]he ABA Standards . . . `do not account for multiple charges of misconduct. The ultimate sanction . . . might well be and generally should be greater than the sanction for the most serious misconduct.'" Id. at 746-47, 122 P.3d 710 (second alteration in original) (quoting ABA Standards at 6). Given that the hearing officer found a presumptive sanction of suspension for six of the eight counts against Mr. Blanchard, FOF and COL at 22-24, and in consideration of the aggravating and mitigating factors and the near unanimity of the Board, I would suspend Mr. Blanchard for one year and order that he pay $770.29 to Ms. Weiser.
WE CONCUR: Justice TOM CHAMBERS, Justice BARBARA A. MADSEN, Justice BOBBE J. BRIDGE.
NOTES
[1] Ms. McManus filed an amended petition for dissolution and arranged for Ms. Westmoreland to be personally served. Ms. McManus filed several motions with the court seeking the return of Mr. Taft's personal property. The court allowed Mr. Taft to retrieve much of his property. A trial date was set; however, prior to the start of trial, Mr. Taft and Ms. Westmoreland agreed on a settlement.
[2] The disciplinary counsel filed an amended complaint on August 10, 2004.
[3] The WSBA also argues that Mr. Blanchard could have filed a motion with the Board seeking an explanation of its reasoning, but he did not. However, no ELC specifically contemplates such a motion. See ELC 10. 1, 11.12(g), 12.3.
[4] Mr. Blanchard also states that the hearing officer improperly found and used as an aggravator his failure to cooperate, which caused injury to the public, profession, and administration of justice. However, the hearing officer did not use this as an aggravator.
[1] While the majority acknowledges that we have not identified such a decisive mitigating factor in Mr. Blanchard's case, the majority nonetheless contends that the comparison is "useful" because of the similarity between the violations in each case. Majority at 295. But because we must consider the violations in light of the aggravating and mitigating factors and the unanimity of the Board, Cohen II, 150 Wash.2d at 758, 82 P.3d 224, Burtch is not analogous to the case before us.