173 P.3d 915 (2007)
In the Matter of the DISCIPLINARY PROCEEDING AGAINST Jeffrey K. DAY, an Attorney at Law.
No. 200,429-6.
Supreme Court of Washington, En Banc.
Argued May 10, 2007.
Decided December 20, 2007.
*917 Brett Andrews Purtzer, Attorney at Law, Tacoma, WA, for Petitioner.
Joanne S. Abelson, Washington State Bar Assc., Seattle, WA, for Respondent.
FAIRHURST, J.
¶ 1 Attorney Jeffrey K. Day appeals the Washington State Bar Association (WSBA) Disciplinary Board's (Board) unanimous adoption of the hearing officer's recommendation to disbar him. Day was convicted of first degree child molestation under RCW 9A.44.083 and sentenced to a term of confinement of 60 months to life. Day molested a former client, D.J., who at the time was 11 years old.
¶ 2 After his conviction, the WSBA filed a formal complaint alleging that Day violated RPC 8.4(b), a criminal act, and RPC 8.4(i), an act involving moral turpitude and an unjustified assault of another. Day argues that although the hearing officer properly applied the presumptive sanction of suspension under the American Bar Association's Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) (ABA Standards), he misapplied the ABA Standards' aggravating and mitigating factors and improperly deviated from the presumptive sanction. The WSBA asks this court to uphold the Board's unanimous recommendation but argues we should apply a presumptive sanction of disbarment for sex crimes of this nature rather than the presumptive sanction of suspension currently required by the ABA Standards. It also *918 argues that because the ABA's Model Rules of Professional Conduct (2004) (Model Rules) do not recognize acts involving moral turpitude and the ABA Standards are based on the Model Rules, Washington case law governs presumptive sanctions for acts involving moral turpitude and, under the facts of this case, the sanction should be disbarment.
¶ 3 We affirm the Board's unanimous recommendation. We conclude that, while the appropriate presumptive sanction for Day's violation of RPC 8.4(b) was suspension under standard 5.12, the hearing officer did not err in ultimately deviating to disbarment based on Day's abuse of D.J.'s and D.J.'s mother's trust. We conclude the ABA Standards does not apply in determining the appropriate presumptive sanction for violations of RPC 8.4(i) involving acts of moral turpitude and the appropriate presumptive sanction under RPC 8.4(i) for conviction of first degree child molestation, a Class A felony involving an act of moral turpitude, is disbarment based on Washington case law. We conclude the hearing officer erred in finding that the aggravating factor of dishonest or selfish motive did not apply, but he did not err regarding the remaining factors. Lastly, we conclude that Day's sanction is not disproportionate when compared to other cases similarly situated.

I. FACTUAL AND PROCEDURAL HISTORY
¶ 4 The parties do not contest the essential facts relating to the conduct that led to this disciplinary action.
¶ 5 Day was admitted to the practice of law in Washington on October 22, 1993. During the relevant time, Day also served as a judge pro tempore. In early 2002, Day began to represent D.J., who was then nine years old, in a criminal matter. While representing D.J., Day learned that D.J. was being raised by a single mother and the family had limited means. After D.J.'s criminal matter was dismissed, Day became friendly with D.J. and D.J.'s mother. Over time, D.J.'s mother began to trust Day and allow D.J. to spend time with Day. D.J.'s mother trusted Day because he was an attorney and a judge.
¶ 6 D.J.'s mother began to allow her son to stay overnight at Day's house. The record is conflicting about how many times D.J. stayed overnight at Day's house. At his criminal trial, Day testified that he instructed D.J. to sleep in another room of Day's house when D.J. stayed overnight. However, Day testified that during one night, D.J. came to Day's room and got into bed with Day. Day stated he was uncomfortable about having D.J. in his bed but he did not confront D.J. about it at the time or inform D.J.'s mother.
¶ 7 On February 14-15, 2004, D.J. was 11 years old. D.J. and Day watched a movie at Day's house and D.J. fell asleep. While D.J. was asleep, Day removed D.J.'s pants, leaving him in his boxer shorts, and Day went to his own bedroom to go to sleep. D.J. woke later in the night and again went to Day's bedroom and got into bed with Day. D.J. claimed he later woke during the night and found Day's hand inside his boxer shorts touching his testicles.
¶ 8 The Pierce County Prosecuting Attorney charged Day with first degree child molestation under RCW 9A.44.083, a Class A felony. A jury convicted Day and sentenced him to a minimum term of confinement of 60 months and a maximum term of life.
¶ 9 After his conviction, the WSBA filed a complaint, charging Day with violating RPC 8.4(b) and/or RPC 8.4(i). This court ordered Day's interim suspension in accordance with ELC 7.1. The WSBA and Day stipulated to a three year suspension, which the Board accepted but only on the condition that the sanction be elevated to disbarment. Day did not agree to the increased sanction and the matter went to a disciplinary hearing.
¶ 10 Hearing officer Gregory J. Rosen found that the court record of Day's conviction was conclusive evidence of his guilt of the crime of first degree child molestation under ELC 10.14(c). He found that Day acted intentionally because "the crime of child molestation requires `sexual contact,' which is defined as `any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party.'" Findings of Fact and Conclusions of Law (FFCL) at ¶ 19 (quoting RCW 9A.44.010(2)). *919 He also found that the evidence presented at the hearing established that Day's conduct caused harm to D.J. and his mother.
¶ 11 In his conclusions of law, the hearing officer determined, in accordance with ELC 10.14(b), that the WSBA had proved by a clear preponderance of the evidence that Day violated RPC 8.4(b)[1] and RPC 8.4(i).[2]
¶ 12 The hearing officer found that Day's criminal conduct violated RPC 8.4(b) for two reasons. First, because the crime of first degree child molestation is a Class A felony and, by definition, a "`violent offense,'" it clearly cast doubt on Day's "fitness" as an attorney. FFCL at ¶ 25. Second, the criminal act implicated Day's trustworthiness because Day abused the trust of both D.J. and his mother by his criminal act. The hearing officer noted that Day had abused D.J.'s mother's trust because the only reason she had allowed Day to pursue a relationship with D.J. was that Day was an attorney and a judge. He also noted that Day's conduct "call[ed] into question [Day's] ability to create and maintain such attorney-client relationships in the future, given his enormous violation of trust as to D.J. and his mother." FFCL at ¶ 25.
¶ 13 The hearing officer also found that Day violated RPC 8.4(i) for two reasons. First, he concluded Day's conduct constituted an "unjustified act of assault."[3] FFCL at ¶ 27 (citing State v. Hupe, 50 Wash.App. 277, 282, 748 P.2d 263 (1988) (for the definition of "assault as" "an unlawful touching with criminal intent")). Second, he concluded Day's "criminal conduct involved moral turpitude." FFCL at ¶ 28 (citing In re Disciplinary Proceeding Against McGrath, 98 Wash.2d 337, 342-43, 655 P.2d 232 (1982)). The hearing officer based his second conclusion, that Day's criminal conduct involved moral turpitude, on the facts that (1) Day was convicted of committing "an extremely serious offense, a Class A felony, punishable by a maximum term of life in prison;" (2) Day's conduct required an intent to gratify his or another's sexual desire; (3) the victim was substantially younger than Day; and (4) Day's conviction had an intent element of knowledge which is "some evidence" of moral turpitude. Id.
¶ 14 In determining the appropriate sanction for both of Day's violations, the hearing officer applied the ABA Standards. First, he determined that two potential presumptive sanctions in the ABA Standards were applicable in this case, standard 5.11[4] and standard 5.12.[5] He noted that the commentary to the ABA Standards suggests that the presumptive standard for sexual offenses like the one involved here is standard 5.12.[6] Although *920 acknowledging that Day acted intentionally when he committed the criminal act of child molestation, the hearing officer concluded that the presumptive sanction that applied here was suspension.
¶ 15 Lastly, the hearing officer evaluated the aggravating factors and mitigating factors.[7] The WSBA argued that three aggravating factors applied: (b) dishonest or selfish motive (sexual gratification), (h) vulnerability of the victim (11 year old child), and (i) substantial experience in the practice of law (admitted in 1993). Day argued that five mitigating factors applied: (a) absence of a prior disciplinary record,[8] (b) absence of a dishonest or selfish motive, (e) full and free disclosure to Board or cooperative attitude toward proceedings, (g) character or reputation, and (k) imposition of other penalties or sanctions.
¶ 16 The hearing officer determined that the only aggravating factor that applied was the vulnerability of the victim and determined the only mitigating factor that applied was the absence of a prior disciplinary record. He expressly concluded that three of Day's proposed mitigating factors, (e) cooperative attitude toward the proceedings, (g) character, and (k) other penalties or sanction, did not apply. He stated that cooperative attitude toward the proceedings has been held by this court not to be a mitigating factor even though it is listed in the ABA Standards because attorneys are expected to cooperate. FFCL at ¶ 34 (citing In re Disciplinary Proceeding Against Dynan, 152 Wash.2d 601, 622, 98 P.3d 444 (2004); In re Disciplinary Proceeding Against Whitt, 149 Wash.2d 707, 721, 72 P.3d 173 (2003)). He noted the evidence submitted regarding Day's character and competence as an attorney but did not comment on whether he considered it a mitigating factor. Lastly, he concluded that Day's criminal penalties and sanctions did not mitigate his sanction but did not explain why.
¶ 17 In summarizing his recommendation of disbarment, the hearing officer commented that this court has held that an attorney may be sanctioned for conduct that occurs outside the practice of law. FFCL at ¶ 38 (citing In re Disciplinary Proceeding Against Huddleston, 137 Wash.2d 560, 577-78, 974 P.2d 325 (1999)). He stated that Day's conduct was an "extreme abuse of the trust that both D.J. and D.J.'s mother had placed in [Day]." FFCL at ¶ 40. Although he acknowledged Day's competence as an attorney and lack of prior discipline as an attorney, he concluded that Day's "criminal act as to a highly vulnerable young victim, a former juvenile client, coupled with the enormous breach of trust associated with that act," justified a "deviation from the presumptive sanction of [s]uspension to the more appropriate sanction of [d]isbarment." FFCL at ¶ 44. He emphasized that D.J.'s mother trusted Day based on his position as an attorney and a pro tem. judge.
¶ 18 The matter came before the Board on automatic review of the hearing officer's decision recommending disbarment. After reviewing briefs of the parties, the Board unanimously adopted the hearing officer's recommendation to disbar Day. In accordance with ELC 12.3(a), Day timely sought review by this court.

II. ISSUES
A. What are the appropriate presumptive sanctions for Day's violations?
B. Did the hearing officer err by not finding additional aggravating and mitigating factors?
C. Is Day's sanction proportional?

III. ANALYSIS
¶ 19 "`Unchallenged findings of fact made by the hearing officer and affirmed by the Disciplinary Board will be accepted as verities on appeal.'" In re Disciplinary Proceeding Against Whitney, 155 Wash.2d 451, 461, 120 P.3d 550 (2005) (quoting In re Disciplinary Proceeding Against Carmick, 146 Wash.2d 582, 594, 48 P.3d 311 (2002)). We review conclusions of law de novo and *921 will uphold them if they are supported by the findings of fact. In re Disciplinary Proceeding Against Marshall, 160 Wash.2d 317, 330, 157 P.3d 859 (2007) (citing In re Disciplinary Proceeding Against Cohen, 150 Wash.2d 744, 754, 82 P.3d 224 (2004)).
¶ 20 Because Day does not challenge the hearing officer's findings of fact, we accept as verities the hearing officer's findings that Day acted intentionally when he committed the offense of which he was convicted, and that Day's conduct caused harm to D.J. and D.J.'s mother. Day also does not challenge the hearing officer's conclusions of law that he violated RPC 8.4(b) and RPC 8.4(i). Our review is limited to determining whether the hearing officer imposed the appropriate sanctions for Day's violations of RPC 8.4(b) and RPC 8.4(i).
¶ 21 Washington has adopted the ABA Standards when imposing sanctions in attorney disciplinary proceedings, as a "basic, but not conclusive, guide." Whitney, 155 Wash.2d at 468, 120 P.3d 550. The court's purpose in adopting the ABA Standards was to promote consistency in disciplinary sanctions. In re Disciplinary Proceeding Against Heard, 136 Wash.2d 405, 424, 963 P.2d 818 (1998).
¶ 22 When determining the proper sanction, the Board conducts a two-step process. In re Disciplinary Proceeding Against Blanchard, 158 Wash.2d 317, 331, 144 P.3d 286 (2006). First, it determines the presumptive sanction by considering the ethical duty(s) the attorney violated, the attorney's mental state, and the harm caused by the attorney's conduct. Id. "The lawyer's mental state may be one of intent, knowledge, or negligence." ABA Standards std. 3.0, Commentary at 25. The harm caused may be "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct." ABA Standards, Definitions at 7. Second, the Board determines if the presumptive sanction should be modified by applying any applicable aggravating or mitigating factors. Blanchard, 158 Wash.2d at 331, 144 P.3d 286.
¶ 23 This court does not "lightly depart from recommendations shaped by [the] experience and perspective" of the Board. In re Disciplinary Proceeding Against Noble, 100 Wash.2d 88, 94, 667 P.2d 608 (1983). We adopt the Board's sanction "unless we are able to articulate specific reasons for adopting a different sanction." Id. at 95, 667 P.2d 608. Nevertheless, "the ultimate responsibility for determining the nature of discipline rests with this court and not the [Board]." Id.
¶ 24 "We review the proportionality of sanctions only if the issue is raised by the attorney who is being disciplined." Whitney, 155 Wash.2d at 469, 120 P.3d 550. Because Day raised the issue of proportionality, that issue is properly before us.
¶ 25 "With respect to unanimity, we give great deference to the decisions of a unanimous Board, and we give less deference to the decision of a divided Board." Id. Day did not question the unanimity of the Board's decision so we need not analyze that issue, but the fact that the Board's recommendation was unanimous is entitled to deference based on our prior jurisprudence. See id.; Noble, 100 Wash.2d at 98, 667 P.2d 608.
A. Presumptive sanctions for violations of RPC 8.4(b) and RPC 8.4(i)
¶ 26 Day argues the appropriate presumptive sanction for his violations of both RPC 8.4(b) and RPC 8.4(i) was suspension under standard 5.12.
¶ 27 Regarding RPC 8.4(b), the WSBA responds that the ABA Standards is archaic and is of limited value with respect to sex crimes. The WSBA argues that generally disbarment is appropriate when the attorney acts intentionally and for his or her own benefit and causes serious harm. It argues those conditions are met here and disbarment is appropriate.
¶ 28 Regarding RPC 8.4(i), the WSBA argues that because the Model Rules does not address violations for acts of moral turpitude, the presumptive sanctions in the ABA Standards do not apply and the court should turn to its own case law for guidance. The WSBA argues our case law would call for disbarment.
*922 1. RPC 8.4(b)
¶ 29 Day argues that suspension is the appropriate presumptive sanction for a violation of RPC 8.4(b) primarily because the commentary to standard 5.12 refers to sexual assaults as the types of cases that are normally subject to suspension. See supra note 6.
¶ 30 The WSBA argues that the ABA Standards does not reflect changing societal attitudes toward sexual assault crimes. Specifically, the WSBA contends that case law and statutes have changed regarding criminal sanctions for sex crimes and, therefore, the ABA Standards is outdated. For example, at the time the ABA Standards was adopted, the conduct for which Day was convicted would have been indecent liberties, a Class B felony, subjecting him to a sentence of up to 10 years. Answering Br. of the WSBA at 13 n. 2. Now it is first degree child molestation, a Class A felony, punishable by up to life in prison. Id. at 13 n. 3. The WSBA also compares a 1976 California case in which the court suspended an attorney for child molestation to a 2001 California case in which the court disbarred an attorney for attempting to commit a lewd act on a child. Id. at 13-14 (citing In re Safran, 18 Cal.3d 134, 133 Cal.Rptr. 9, 554 P.2d 329 (1976); In re Lesansky, 25 Cal.4th 11, 17, 104 Cal. Rptr.2d 409, 17 P.3d 764 (2001)). It also cites increases in the severity of criminal sanctions related to sex crimes against children. Id. at 13, 104 Cal.Rptr.2d 409, 17 P.3d 764.
¶ 31 We do not deny that the WSBA's arguments are compelling. Greater societal awareness of sexual crimes against children and the resulting abuse of trust are arguably justifiable reasons for increasing presumptive sanctions for attorneys who engage in such misconduct. But our case law clearly affirms that the ABA Standards provides the basis for imposing standards for attorney discipline for Washington rules that are based on the Model Rules and we are disinclined to lightly discard that precedent. See In re Disciplinary Proceeding Against Halverson, 140 Wash.2d 475, 492, 998 P.2d 833 (2000); Whitney, 155 Wash.2d at 468, 120 P.3d 550. Because this court has established that Washington adopted the ABA Standards when imposing sanctions for attorney discipline for Washington rules that are based on the Model Rules, we conclude that the hearing officer properly determined that suspension was the appropriate presumptive sanction under standard 5.12 for Day's violation of RPC 8.4(b).
¶ 32 Having concluded that the appropriate presumptive sanction for Day's violation of RPC 8.4(b) was suspension under standard 5.12, we must decide whether the hearing officer erred in ultimately concluding it was appropriate to deviate from that presumptive sanction and increase Day's sanction to disbarment, based on his determination that Day abused D.J.'s and D.J.'s mother's trust.
¶ 33 Day argues the hearing officer improperly deviated from the presumptive sanction based on Day's alleged abuse of D.J.'s and D.J.'s mother's trust because Day's conduct occurred outside the practice of law. The WSBA responds that the deviation was appropriate because Day met D.J. in his capacity as an attorney, and Day had access to D.J. only because D.J.'s mother knew he was an attorney.
¶ 34 This court has clearly established that an attorney may be sanctioned for misconduct that occurs outside the practice of law. Whitney, 155 Wash.2d at 462, 120 P.3d 550; Huddleston, 137 Wash.2d at 577-78, 974 P.2d 325 (concluding the fact the lawyer's misconduct occurred outside the practice of law is not a mitigating factor). But we have held that "`conduct reflecting adversely on a lawyer's fitness to practice law can only be found when there is some nexus between the lawyer's conduct and those characteristics relevant to law practice.'" In re Disciplinary Proceeding Against Plumb, 126 Wash.2d 334, 341, 892 P.2d 739 (1995) (quoting In re Disciplinary Proceeding Against Curran, 115 Wash.2d 747, 768, 801 P.2d 962 (1990)); see also Huddleston, 137 Wash.2d at 577, 974 P.2d 325. We have also made it clear that "`evidence of the practitioner's capability will not always be determinative of whether an act reflects adversely on an attorney's fitness.'" Plumb, *923 126 Wash.2d at 341, 892 P.2d 739 (quoting Curran, 115 Wash.2d at 768, 801 P.2d 962).
¶ 35 Plumb was convicted of first degree theft for failing to report earnings he received while participating in a public aid program. Id. at 335, 892 P.2d 739. The court noted that theft was "an archetypal criminal act `that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.'" Id. at 341, 892 P.2d 739 (quoting RPC 8.4(b)). It held that Plumb's conviction "temper[ed] any evidence of his competence" and provided the required nexus between his crime of dishonesty and his unfitness to practice. Id. In Curran, the court concluded there was an insufficient nexus between the lawyer's conduct and "those characteristics relevant to law practice" where the lawyer committed vehicular homicide. 115 Wash.2d at 768, 801 P.2d 962.
¶ 36 Here, the hearing officer did not err when he found that Day's conduct arose out of his practice and Day's conduct constituted "an extreme abuse of the trust that both D.J. and D.J.'s mother had placed in [Day]." FFCL at ¶ 40. And even if the misconduct were determined to be outside the practice of law, the nexus required by Plumb and Curran exists between Day's conviction for child molestation and his unfitness to practice law because his crime involved a profound violation of trust, a necessary component of the practice of law. The hearing officer properly found that despite Day's competence as an attorney, the "enormous breach of trust" associated with his misconduct justified deviating from the presumptive sanction of suspension. FFCL at ¶ 44.
¶ 37 This court does not depart from the Board's recommended sanction unless we can articulate specific reasons for adopting a different sanction. Noble, 100 Wash.2d at 95, 667 P.2d 608. We have recognized that the ABA Standards "`leaves room for flexibility and creativity in assigning sanctions in particular cases of lawyer misconduct.'" Halverson, 140 Wash.2d at 497 n. 16, 998 P.2d 833 (quoting ABA Standards, Preface at 1). Although standard 5.12 states that suspension is the presumptive sanction for criminal acts that are not listed in standard 5.11, the hearing officer set out his reasoning for departing from the presumptive sanction based on the specific facts of this case. There is no question that Day acted intentionally, Day's victim and the victim's mother were harmed, Day's victim was highly vulnerable, and Day abused the trust he had established with the victim and his mother.
¶ 38 We conclude that while suspension was the appropriate presumptive sanction under standard 5.12 for Day's violation of RPC 8.4(b), the hearing officer did not err in deviating from suspension to disbarment based on Day's abuse of D.J.'s and D.J.'s mother's trust.
2. RPC 8.4(i)
¶ 39 Next, we determine whether standard 5.12 applies to violations of RPC 8.4(i).[9] If standard 5.12 applies, we must decide whether the hearing officer erred in deviating from the presumptive sanction and increasing Day's sanction to disbarment, based on Day's abuse of D.J.'s and D.J.'s mother's trust. If we conclude standard 5.12 does not apply, we must determine what the appropriate presumptive sanction should be based on Washington case law. Both parties rely on two cases issued by this court, McGrath, 98 Wash.2d 337, 655 P.2d 232, and Curran, 115 Wash.2d 747, 801 P.2d 962. McGrath was issued before this court adopted the ABA Standards and Curran was issued after we adopted the ABA Standards.
¶ 40 McGrath involved an attorney who pleaded guilty to second degree assault, a Class B felony, for shooting and injuring a man at a restaurant. 98 Wash.2d at 339-40, 655 P.2d 232. He was sentenced to serve 10 years probation and 1 year in the King County Jail on work release, in addition to paying restitution and making a payment to the crime victim compensation fund. Id. at 340, *924 655 P.2d 232. This court concluded McGrath's conduct constituted moral turpitude under the former Discipline Rules for Attorneys (DRA) 1.1(a) (1978) and warranted disbarment.[10]Id. The court noted that:
"[T]he cases dealing with the disbarment or other discipline of lawyers involve two distinct characteristics, although the distinction is often not clearly recognized:
1. Cases in which the lawyer's conduct has shown him to be one who cannot properly be trusted to advise and act for clients
2. Cases in which his conduct has been such that, to permit him to remain a member of the profession and to appear in court, would cast a serious reflection on the dignity of the court and on the reputation of the profession."
Id. at 345, 655 P.2d 232 (alteration in original) (quoting HENRY S. DRINKER, LEGAL ETHICS 42-43 (1953)). It concluded McGrath's conduct fell in the second category and was "repugnant to the basic standards of our legal profession to allow one who is serving a 10-year probation sentence for a felony conviction, for an act involving moral turpitude, to practice law and represent clients in the courts of this state." Id. It also noted that McGrath's competence as an attorney was irrelevant to the question of whether his remaining a lawyer would cast a serious reflection on the dignity of the court and on the reputation of the profession. Id. at 345-46, 655 P.2d 232.
¶ 41 Curran involved an attorney convicted of vehicular homicide and sentenced to 26 months of confinement after two passengers in his car were killed while he was driving under the influence of alcohol. 115 Wash.2d at 752, 801 P.2d 962. The WSBA charged Curran under former Rules for Lawyer Discipline (RLD) 1.1(a) (1985).[11]Id. at 753, 801 P.2d 962. Former RLD 1.1 stated that a lawyer may be sanctioned for
(a) The commission of any act involving moral turpitude, dishonesty, or corruption, or any unjustified act of assault or other act which reflects disregard for the rule of law, whether the same be committed in the course of his or her conduct as a lawyer, or otherwise, and whether the same constitutes a felony or misdemeanor or not; and if the act constitutes a felony or misdemeanor, conviction thereof in a criminal proceeding shall not be a condition precedent to disciplinary action, nor shall acquittal or dismissal thereof preclude the commencement of a disciplinary proceeding.
¶ 42 Curran was charged with violating the portion of former RLD 1.1(a) related to an "`act . . . which reflects disregard for the rule of law.'" Curran, 115 Wash.2d at 753, 801 P.2d 962. However, as part of its analysis, the court commented that, contrary to the Model Rules, Washington rules forbid all acts involving "`moral turpitude.'" Id. at 757, 801 P.2d 962 (quoting former RLD 1.1(a)). The court concluded that because the ABA Standards does not provide direct guidance for violations of former RLD 1.1(a), it must determine on its own what the presumptive sanction should be. Id. at 770-71, 801 P.2d 962.
¶ 43 Day argues that one of the court's primary purposes in adopting the ABA Standards was to promote uniformity in disciplinary sanctions and this court should not rely on any pre-ABA Standards case law. He claims that because McGrath is a pre-ABA Standards case, its reasoning is suspect and *925 should be rejected. He argues that Curran emphasized the ABA Standards' "`modern trend' of putting more emphasis on disciplining lawyers for violation of practice norms." Reply Br. at 4. Day urges us to follow the reasoning of Justice Williams' dissent in McGrath, which he claims represents the "modern trend" that was later adopted in the ABA Standards. Br. of Appellant at 12. Justice Williams argued that although McGrath's conduct was an act of moral turpitude, not all acts of moral turpitude are alike and crimes involving dishonesty are more incompatible with the practice of law than other crimes. McGrath, 98 Wash.2d at 347-48, 655 P.2d 232 (Williams, J., dissenting). Day argues that, like Justice Williams' dissent in McGrath, the ABA Standards reflects the trend toward disciplining attorneys for "violations of practice norms" rather than "actions not directly related to the practice of law." Br. of Appellant at 12.
¶ 44 The WSBA, while acknowledging that McGrath predates the ABA Standards, argues that it is still good law and this court should continue to apply it. It argues that because the Model Rules does not acknowledge violations for acts of moral turpitude, the presumptive sanctions in the ABA Standards do not apply, and the court should turn to its own case law for guidance. It notes that despite Day's assertions, Curran acknowledged that Washington rules "`do not fully embrace the modern trend.'" Answering Br. of the WSBA at 14 (quoting Curran, 115 Wash.2d at 757, 801 P.2d 962). The WSBA argues that a presumptive sanction for acts of moral turpitude should be disbarment because it would "protect[] the public from lawyers who lack the basic fitness to practice law." Id. at 16. It argues that Day's actions were more "culpable" than either Curran's or McGrath's because he acted both knowingly and in his own interest. Id. at 17.
¶ 45 We agree with the WSBA. Even under Justice Williams' analysis, a lawyer molesting a former client who is a minor qualifies as an act of moral turpitude warranting disbarment. "[C]onduct reflecting adversely on a lawyer's fitness to practice law" exists "when there is some nexus between the lawyer's conduct and those characteristics relevant to law practice." Curran, 115 Wash.2d at 768, 801 P.2d 962. As noted supra, with regard to RPC 8.4(b), there is a nexus between Day's conviction for child molestation and his unfitness to practice law because his crime involved a profound violation of trust, a necessary component of the practice of law.
¶ 46 We reject Day's arguments for three additional reasons. First, the McGrath majority explicitly recognized that acts that "`cast a serious reflection on the dignity of the court and on the reputation of the profession'" merited disbarment, not just acts involving dishonesty. McGrath, 98 Wash.2d at 345, 655 P.2d 232 (quoting DRINKER, supra, at 42-43). Second, the majority's reasoning in McGrath has not been overruled. Third, irrespective of this court's express adoption of the ABA Standards, Washington rules continue to recognize acts involving moral turpitude while the Model Rules does not. Thus, the ABA Standards provides no guidance for sanctions related to acts involving moral turpitude. Additionally, we are persuaded that acts of moral turpitude are substantively different from acts involving a mere disregard for the rule of law and merit a greater presumptive sanction because the practice of law involves more than mere adherence to practice norms.
¶ 47 We hold that the ABA Standards does not apply to presumptive sanctions for violations of RPC 8.4(i) involving acts of moral turpitude because the Model Rules does not address acts of moral turpitude. We also hold the appropriate presumptive sanction for first degree child molestation, a Class A felony involving an act of moral turpitude, is disbarment based on Washington case law.
B. Aggravating and mitigating factors
¶ 48 Both Day and the WSBA argue that the hearing officer erred in not finding other aggravating and mitigating factors.
¶ 49 Day argues the hearing officer should have considered his criminal sentence as an *926 additional mitigating factor.[12] He relies primarily on Curran for this argument, claiming the Curran court considered Curran's criminal sentence for vehicular homicide a mitigating factor when it reduced Curran's disciplinary sanction. He also cites Justice Williams' dissenting opinion in McGrath as support for the argument that a disciplinary sanction should relate only to the practice of law, whereas criminal sanctions punish criminal conduct.
¶ 50 The WSBA responds that Day's criminal sentence does not reduce the need to discipline the attorney. It notes that the commentary to the ABA Standards does not cite any cases in which criminal sanctions were used as mitigating factors, nor do the standards require the hearing officer to give aggravating and mitigating factors any particular weight when determining the appropriate sanction. It also argues that the hearing officer in Curran considered only Curran's interim disciplinary sanction, not his criminal sentence, when it reduced his sanction and the McGrath court cited the criminal sanction as a factor supporting disbarment.
¶ 51 The WSBA is correct that the Curran court considered only Curran's interim disciplinary sanction, not his criminal sentence, when it reduced Curran's sanction, and in discussing the mitigating factors, the court did not even mention Curran's criminal sentence. Curran, 115 Wash.2d at 774, 801 P.2d 962. However, In re Disciplinary Proceeding Against Immelt, 119 Wash.2d 369, 372, 831 P.2d 736 (1992), provides that a previous criminal prosecution may be a mitigating factor as "other penalties or sanctions." In Immelt, the hearing officer had recommended disbarment, and Immelt had argued his conviction of a crime prior to discipline by the Bar outweighed the aggravating factors, making disbarment an inappropriate sanction. Id. at 371-72, 831 P.2d 736. This court found that while the mitigating factor was present, it did not mitigate in favor of a sanction less than disbarment, given that the record "indicated an otherwise appropriate sanction should not be modified." Id. at 372, 831 P.2d 736; see also In re Disciplinary Proceeding Against Perez-Pena, 161 Wash.2d 820, 835-36, 168 P.3d 408 (2007) (refusing to apply municipal court sanctions as a mitigating factor because Curran applied the mitigating factor only to the interim suspension applied by this court, and not his prison sentence). The weight, if any, given to the mitigating factor will depend on the circumstances of the specific case. The record supports our not modifying the sanction of disbarment.
¶ 52 Further, the WSBA is correct that the McGrath court considered McGrath's conviction to be a key factor supporting disbarment. 98 Wash.2d at 345-46, 655 P.2d 232. While this court's decision in McGrath predates both the RPCs and ELCs, we find no less persuasive our reasoning that it is "repugnant to the basic standards of our legal profession to allow one who [has been convicted of a felony] for an act involving moral turpitude, to practice law and to represent clients in the courts of this state." Id. at 345, 655 P.2d 232. Because the record supports not deviating from the sanction of disbarment and because Day's criminal conviction supports disbarment, we find no error with the finding of the hearing officer and the Board that the factor of other penalties and sanctions did not mitigate Day's sanction.
¶ 53 The WSBA argues that the hearing officer improperly rejected two of its proposed aggravating factors: (b) dishonest or selfish motive, and (i) substantial experience in the practice of law.
¶ 54 The WSBA argues the hearing officer should have applied the aggravating factor of dishonest or selfish motive, under standard 9.22(b), because the crime of child *927 molestation requires touching for the purpose of sexual gratification. Day responds that the WSBA does not point to any cases in which Washington courts have applied this factor in cases involving sexual assault. Cases that have applied the aggravating factor of dishonest or selfish motive related to attorney misuse of client funds, forgery, perjury, and theft. See, e.g., Blanchard, 158 Wash.2d at 320-25, 144 P.3d 286 (failed to keep clients informed and return fees); Whitney, 155 Wash.2d at 455, 120 P.3d 550 (testifying falsely); In re Disciplinary Proceeding Against Schwimmer, 153 Wash.2d 752, 754-57, 108 P.3d 761 (2005) (misappropriated funds and miscommunicated with client); In re Disciplinary Proceeding Against Christopher, 153 Wash.2d 669, 674-75, 105 P.3d 976 (2005) (forged client's signature). Nevertheless, we agree with the WSBA that conviction for a crime that involves touching for the purpose of sexual gratification, such as child molestation, demonstrates a selfish motive and the hearing officer erred in not finding that it was an aggravating factor.
¶ 55 The WSBA argues the hearing officer should have applied the aggravating factor of substantial experience in the practice of law, under standard 9.22(i), because Day had more than 10 years experience before the misconduct occurred. Day responds that the sole case the WSBA cites, In re Disciplinary Proceeding Against Lopez, 153 Wash.2d 570, 575-76, 106 P.3d 221 (2005) (missed court deadlines and failed to communicate with the court), is irrelevant because it involved an attorney disciplined for failing to follow procedures he was required to perform as an attorney. Reply Br. at 10-11. Other cases that have applied the aggravating factor of substantial experience in the practice of law support Day's position. See, e.g., Blanchard, 158 Wash.2d at 320-24, 144 P.3d 286 (failed to keep clients informed and return fees); Whitney, 155 Wash.2d at 455, 120 P.3d 550 (testified falsely); Schwimmer, 153 Wash.2d at 754-57, 108 P.3d 761 (misappropriated funds and miscommunicated with client); Christopher, 153 Wash.2d at 674-75, 105 P.3d 976 (forged client's signature). In only one case involving conduct unrelated to the practice of the law did the hearing officer apply the aggravating factor of substantial experience in the practice of the law, Halverson, 140 Wash.2d at 496-99, 998 P.2d 833 (consensual sexual relationship with client), but the Halverson court did not discuss the weight it gave the factor in determining the attorney's sanction. We conclude the hearing officer did not err in not applying the aggravating factor of substantial experience in the practice of law.
C. Proportionality
¶ 56 Day argues that under proportionality review, the court must compare the case at hand with other cases similarly situated to determine if the sanction is lower or higher than warranted. The WSBA points out that the Board's unanimity supports the Board's recommendation in this case and argues that Day failed to support his claim that other similarly situated cases support adopting a lesser sanction.
¶ 57 Day relies primarily on two cases, Heard and Halverson, both of which involved sexual misconduct and resulted in sanctions of suspension. But both cases are distinguishable from this case.
¶ 58 Heard involved an attorney who had sex with a client suffering from head injuries. 136 Wash.2d at 409, 963 P.2d 818. Although the client was arguably vulnerable, she was not a minor, she and Heard had consensual sex, and Heard was not convicted of committing a crime. Id. at 409-13, 963 P.2d 818. The Heard court found that Heard's conduct was an act of moral turpitude and even though there were arguable grounds for Heard's disbarment, it declined to disturb the Board's unanimous recommendation of suspension. Id. at 425, 963 P.2d 818.
¶ 59 Halverson involved an attorney who had consensual sex with a client he was representing in a dissolution action. 140 Wash.2d at 478-79, 998 P.2d 833. Despite the fact that Halverson had the sexual relationship with the client while he was representing her, the court expressly held that Halverson did not "`blatantly misuse[] his professional status to exploit [a] client's vulnerability.'" Id. at 4n91, 998 P.2d 833 (first alteration in original) (quoting Heard, 136 *928 Wash.2d at 423 n. 9, 963 P.2d 818). It distinguished the facts from other cases because the client was not a juvenile and was not vulnerable. Id. at 491, 963 P.2d 818.
¶ 60 Day attempts to analogize this case to cases in other jurisdictions that applied sanctions of suspension for conduct similar to Day's. Br. of Appellant at 22-23 (citing In re Disciplinary Action Against Kimmel, 322 N.W.2d 224, 226-27 (Minn.1982) (attorney's license suspended for conviction of touching 13 year old boy); Iowa Supreme Court Bd. of Prof'l Ethics & Conduct v. Blazek, 590 N.W.2d 501, 502, 504 (Iowa 1999) (attorney's license suspended for conviction of sexually assaulting 11 year old nephew); In re Disciplinary Proceedings Against Lyons, 2003 WI 139, 266 Wis.2d 55, 670 N.W.2d 550, 551-52 (2003) (attorney's license suspended for conviction of sexual assault and inappropriate contact with minors); In re Disciplinary Proceedings Against Strigenz, 185 Wis.2d 370, 517 N.W.2d 190-91 (1994) (attorney's license suspended for conviction of nonconsensual sexual assault of a client)).
¶ 61 The WSBA responds that the attorneys in Kimmel and Blazek were undergoing rehabilitation and that fact was relevant to their sanctions. Kimmel, 322 N.W.2d at 227; Blazek, 590 N.W.2d at 504. It notes that the client in Strigenz was not a minor and, therefore, that case was more comparable to Heard and Halverson than this one. Strigenz, 517 N.W.2d at 191. The WSBA also cites cases in other jurisdictions in which disbarment was imposed for sexual assaults of minors. Id. (citing Lesansky, 104 Cal. Rptr.2d 409, 17 P.3d at 768 (attorney disbarred for conviction of attempt to commit a lewd or lascivious act on a minor); In re Bewig, 791 A.2d 908, 909 (D.C.2002) (attorney disbarred for conviction of misdemeanor sexual contact with a minor); In re Hudgins, 540 N.E.2d 1200, 1203 (Ind.1989) (attorney disbarred for conviction of child molestation); People v. Grenemyer, 745 P.2d 1027, 1029-31 (Colo.1987) (attorney disbarred for conviction of sexual assault of a child)).
¶ 62 Here, Day engaged in sexual touching that could not have been consensual, even if D.J. had instigated it, and D.J. was an extremely vulnerable victim. This case is distinguishable from the cases Day cites from other jurisdictions in which attorneys were suspended because two of the attorneys were undergoing rehabilitation and one did not involve a minor and is more analogous to the cases the WSBA cites in which the attorneys were disbarred. We conclude that Day's sanction was not disproportionate in comparison to other cases similarly situated.

IV. CONCLUSION
¶ 63 We affirm the Board's unanimous recommendation to disbar Day. We conclude that while the appropriate presumptive sanction for Day's violation of RPC 8.4(b) was suspension under standard 5.12, the hearing officer did not err by ultimately deviating to disbarment based on Day's abuse of D.J.'s and D.J.'s mother's trust. We conclude the ABA Standards does not apply in determining the appropriate presumptive sanction for violations of RPC 8.4(i) involving acts of moral turpitude and the appropriate presumptive sanction under RPC 8.4(i) for conviction of a Class A felony involving an act of moral turpitude is disbarment based on Washington case law. We conclude the hearing officer erred in finding that the aggravating factor of selfish motive did not apply but he did not err in his conclusions regarding the remaining factors. Lastly, we conclude that Day's sanction is not disproportionate as compared to other cases similarly situated.
WE CONCUR: GERRY L. ALEXANDER, C.J., TOM CHAMBERS, CHARLES W. JOHNSON, SUSAN OWENS, BARBARA A. MADSEN, JAMES M. JOHNSON, BOBBE J. BRIDGE, JJ.
SANDERS, J. (dissenting).
¶ 64 We are asked to answer a simple question: whether disbarment is the appropriate sanction for Jeffrey K. Day, convicted of molesting a former juvenile client. The majority believes it is appropriate but does not stop there, broadly holding the presumptive sanction for any conviction of a class A felony involving "moral turpitude" is disbarment. Majority at 928.
¶ 65 I disagree. In my opinion, the proper sanction for Day is suspension. Day's conduct *929 did not violate RPC 8.4(b) because the required nexus between his conduct and any relevant characteristic to the practice of law was absent. Day's conduct did violate RPC 8.4(i) because it was an unjustifiable act of assault reflecting a disregard for the rule of law and suspension is the presumptive sanction for sexual assault crimes. Last, I cannot follow the majority's broad holding that violating the vague "moral turpitude" standard presumptively requires disbarment.
Day's conduct does not implicate RPC 8.4(b); violations of personal trust are not violations of professional trust
¶ 66 "[RPC 8.4(b)] is not concerned with maintaining public confidence in the bar by disciplining lawyers harming the public image of the bar[;][r]ather it is concerned with protecting the public from incompetent practitioners." In re Disciplinary Proceeding Against Curran, 115 Wash.2d 747, 768, 801 P.2d 962 (1990). Therefore "conduct reflecting adversely on a lawyer's fitness to practice law can only be found when there is some nexus between the lawyer's conduct and those characteristics relevant to law practice." Id. (emphasis added). Day's conduct does not implicate his fitness to practice law because there is no nexus between his conduct and any relevant characteristics necessary to the practice. That Day's conduct violated the personal trust D.J. and D.J.'s mother placed in him as a person does not automatically violate the professional trust D.J. and D.J.'s mother placed in him as a lawyer.
¶ 67 The majority concludes Day's conviction involves "a profound violation of trust, a necessary component to the practice of law." Majority at 923. Certainly trust is a necessary component of practicing law; however, trust does not exist in a vacuum; it flows from professional obligations the lawyer owes the client or public. See ABA, Standards for Imposing Lawyer Sanctions std. 1.1 (1991 & Supp.1992) (Standards). Because the majority does not tell us whose trust was violated, we must analyze the professional obligations flowing from Day to D.J. and from Day to D.J.'s mother.
¶ 68 Day owed D.J., as a former client, various professional duties. See, e.g., RPC 1.9 (Duties to Former Clients). The comments to the Rules of Professional Conduct provide, "[a]fter termination of a client-lawyer relationship, a lawyer has certain continuing duties with respect to confidentiality and conflicts of interest." RPC 1.9 cmt. 1. If Day violated any one of these continuing duties he would have clearly violated the trust D.J. placed in Day as his lawyer.
¶ 69 Other ethical obligations, however, cease once a client becomes a former client. See, e.g., RPC 1.8(j)(1) ("A lawyer shall not . . . have sexual relations with a current client of the lawyer." (emphasis added)). Rules such as RPC 1.8(j)(1) recognize and permit a change in the status of the relationship from professional to personal once a lawyer's representation ceases. With this change in status comes a change in the trust flowing from the lawyer to the former client. As the comments to RPC 1.8 explain:
The relationship between lawyer and client is a fiduciary one in which the lawyer occupies the highest position of trust and confidence[;] . . . thus, a sexual relationship between lawyer and client can involve unfair exploitation of the lawyer's fiduciary role, in violation of the lawyer's basic ethical obligation not to use the trust of the client to the client's disadvantage.
RPC 1.8 cmt. 17.
¶ 70 In other words the fiduciary role the lawyer holds in his or her professional capacity triggers the exploitation of trust resulting from a sexual relationship; without this fiduciary role personal, not professional, trust is involved and hence the lawyer is permitted to engage in consensual sexual activity with a former client.
¶ 71 Here, of course, Day could not engage in consensual sexual activity with D.J. Whether a lawyer's conduct is chivalrous or criminal, however, is irrelevant to whether the lawyer breached a former client's trust because RPC 8.4(b) is not concerned with the public's image of the bar but protecting the public from incompetent lawyers. See Curran, 115 Wash.2d at 768, 801 P.2d 962. The trust flowing from Day to D.J. was one of a personal, not professional, nature. As such, *930 violating this personal trust does not necessarily implicate a lawyer's competence to practice law.
¶ 72 As for D.J.'s mother, the majority cites no RPC establishing a duty between Day and D.J.'s mother. Instead, the majority would have us believe because she knew Day was an attorney and therefore trusted Day, Day's conduct "involved a profound violation of trust." Majority at 923. This independent establishment of professional trust divorced from any relevant professional duty places all attorneys on precarious grounds. Every lawyer now becomes vulnerable to disciplinary action merely because the accusing party knew of the lawyer's status as a lawyer, trusted in that status, and was somehow aggrieved. The cornucopia of frivolity this opens is staggering to comprehend. Surely, the majority cannot mean such sweeping language, divorcing professional trust from any professional ethical obligation. The majority's reasoning defeats the purpose of the rules, to protect us from lawyers who violate professional duties. Standards std. 1.1.
¶ 73 This is not to dismiss that which befell D.J. and his mother but to highlight the central purpose of RPC 8.4(b), namely protecting the public from incompetent practitioners. Curran, 115 Wash.2d at 768, 801 P.2d 962. As such, our case law draws a clear line between conduct implicating a lawyer's fitness to practice law and conduct that does not. Compare, e.g., In re Disciplinary Proceeding Against Huddleston, 137 Wash.2d 560, 974 P.2d 325 (1999) (false representation); In re Disciplinary Proceeding Against Plumb, 126 Wash.2d 334, 892 P.2d 739 (1995) (theft); and In re Disciplinary Proceeding Against Johnson, 114 Wash.2d 737, 790 P.2d 1227 (1990) (conversion of client funds for personal use) with Curran, 115 Wash.2d 747, 801 P.2d 962 (vehicular homicide).
¶ 74 Here, Day's conduct did not violate any professional trust or duty placed in him as a lawyer. As such, it does not implicate the "`characteristics relevant to law practice.'" Curran, 115 Wash.2d at 766, 801 P.2d 962 (quoting ABA, Model Rules of Professional Conduct 100 (1983)).
The presumptive sanction for sexual assault is suspension; "moral turpitude" is too vague and inconsistent a standard to determine appropriate conduct
¶ 75 In disciplinary cases the American Bar Association's Standards directs our inquiry. In re Disciplinary Proceeding Against Poole, 156 Wash.2d 196, 220, 125 P.3d 954 (2006). Guided by the Standards we ascertain the presumptive sanction based on the ethical duty violated by the lawyer, the mental state of the lawyer, and the actual or potential injury caused by the misconduct. In re Disciplinary Proceeding Against Halverson, 140 Wash.2d 475, 492, 998 P.2d 833 (2000). Once the presumptive sanction is established, we determine whether any deviation from this presumptive sanction is proper. In re Disciplinary Proceeding Against Haley, 156 Wash.2d 324, 339, 126 P.3d 1262 (2006).
¶ 76 Two presumptive sanctions from the Standards are applicable in this instance: 5.11[1] and 5.12.[2] Standard 5.11 sets out disbarment as the generally appropriate sanction "where a lawyer engages in serious criminal conduct or intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." In re *931 Disciplinary Proceeding Against Marshall, 160 Wash.2d 317, 343, 157 P.3d 859 (2007) (emphasis omitted) (footnote omitted). Standard 5.12 sets out suspension as the generally appropriate sanction for "a lawyer [who] knowingly engages in less serious criminal conduct" implicating the lawyer's fitness to practice. Id. 343-44, 157 P.3d 859 (emphasis omitted). The commentary to the Standards specifically references sexual assault as a common example of a lawyer's less serious criminal conduct resulting in suspension.[3]
¶ 77 The majority states, "the ABA Standards provides no guidance for sanctions related to acts involving moral turpitude." Majority at 925. Nevertheless, "[o]ur adoption of these standards reflects our agreement with the purposes they are meant to serve, the creation of consistency in imposing sanctions both within and between jurisdictions." Curran, 115 Wash.2d at 770-71, 801 P.2d 962. By ignoring the Standards and our reason for adopting them, the majority uses the vague label of "moral turpitude" to look into our case law to develop the presumptive sanction. Majority at 925.
¶ 78 From our case law the majority gleans, "the appropriate presumptive sanction for first degree child molestation, a Class A felony involving an act of moral turpitude, is disbarment." Id. However, of the two cases cited by the majority in support of this proposition, one expressly refused to address "moral turpitude" and the other was decided years before we adopted the Standards and its purpose as our guide. See Curran, 115 Wash.2d at 764, 801 P.2d 962 ("Because bar counsel did not charge Curran with violating the portion of RLD 1.1(a) forbidding acts involving moral turpitude, we will not consider this here."); In re Disciplinary Proceeding Against McGrath, 98 Wash.2d 337, 655 P.2d 232 (1982).[4]
¶ 79 Since McGrath is the only case supporting the majority's assertion of disbarment being the appropriate presumptive sanction, future hearing officers will look to McGrath for guidance when determining whether conduct meets the criterion of "moral turpitude." Under McGrath, "[m]oral turpitude must be determined from `the inherent immoral nature of the act.'" 98 Wash.2d at 342, 655 P.2d 232 (quoting In re Hopkins, 54 Wash. 569, 572, 103 P. 805 (1909)). A rule prohibiting "immoral" conduct may not provide a basis for disciplining attorneys because it is arguably unconstitutionally vague. See Curran, 115 Wash.2d at 758, 801 P.2d 962 ("A law forbidding conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law."). See also In re Disciplinary Proceeding Against Heard, 136 Wash.2d 405, 434-35, 963 P.2d 818 (1998) ("`[M]oral turpitude' is vague and overly broad absent at least some nexus to the practice of law which is the only justification for any of these rules in the first place." (Sanders, J., dissenting)).
¶ 80 To avoid the vagueness problem the majority finds a nexus between Day's legal practice and his criminal conduct. Majority at 925. For reasons already stated this nexus is illusory, constructed from personal trust completely divorced from professional obligations. See supra at 929-30.
Departing from this presumptive sanction is inappropriate
¶ 81 As stated above once we establish the presumptive sanction we must then determine *932 whether any departure from the presumptive sanction is proper. Haley, 156 Wash.2d at 339, 126 P.3d 1262. In my opinion the aggravating and mitigating factors are not "sufficiently compelling to justify a departure" from the presumptive sanction.[5]In re Disciplinary Proceeding Against Cohen, 149 Wash.2d 323, 339, 67 P.3d 1086 (2003).
¶ 82 In my view the factors of this case present one aggravating factor (the vulnerability of the victim) and two mitigating factors (Day's lack of prior disciplinary record and his criminal sentence). However, the majority asserts, the hearing officer did not err when he declined to consider Day's criminal sentence as a mitigating factor, majority at 926-27, and relies on McGrath to support its position that criminal convictions are a key factor to support disbarment. Majority at 926-27.
¶ 83 But, as stated previously, McGrath is a pre-Standards case, whereas our case law clearly holds the "imposition of other penalties or sanctions" including criminal sanctions is a mitigating factor. Standards std. 9.32. See In re Disciplinary Proceeding Against Vanderbeek, 153 Wash.2d 64, 95, 101 P.3d 88 (2004) ("We have held that criminal penalties properly serve as a mitigating factor." (citing In re Disciplinary Proceeding Against Immelt, 119 Wash.2d 369, 372, 831 P.2d 736 (1992); In re Disciplinary Proceeding Against Petersen, 120 Wash.2d 833, 856, 846 P.2d 1330 (1993))). The majority distances itself from the clear import of this precedent (if not attempting to overrule it sub silentio) by restating the obvious: a criminal sanction's mitigating effect is based on the circumstances of the case. But then the majority jumps to the conclusion, without the benefit of analysis, that Day's criminal sanction provides no mitigating effect. Majority at 926-27. However, if a criminal sanction is to have any mitigating effect at all, which our case law instructs us it does, then the circumstances here must support some mitigating offset against the single aggravating factor.[6]
¶ 84 In Immelt this court concluded the single mitigating factor of Mr. Immelt's criminal sanction did not permit a modification of the disciplinary sanction in light of many aggravating factors. Immelt, 119 Wash.2d at 372, 831 P.2d 736. In other words, the multiplicity of aggravating factors offset the mitigating effect of Mr. Immelt's criminal *933 sanction. Here, on the other hand, no such multiplicity exists to diminish the mitigating effect of Day's criminal sanction. The record indicates Day has no prior disciplinary offenses, and, as discussed below, his conduct does not reflect a dishonest or selfish motive. If we are to recognize a criminal sanction as a mitigating factor, as case law instructs, under these circumstances the mitigating factor of Day's criminal sanction is undiminished by the aggravating factor of the vulnerability of D.J. But, in its zeal to disbar Day, the majority seeks to roll back the clock to pre-Standards sanctions, ignoring over a decade of case law.
¶ 85 The majority finds the hearing officer erred by not extending the aggravating factor of dishonest and selfish motive to also include "touching for the purpose of sexual gratification." Majority at 927. As the majority correctly states our case law regarding this factor discusses only misuse of client funds, forgery, perjury, and theft. Id. Nonetheless, the majority finds an error in reasoning reminiscent of the maxim, justice varies with the size of the "chancellor's foot."[7]
¶ 86 To reiterate my view, the factual findings and case law support two mitigating factors: (1) the absence of prior disciplinary proceeding and (2) the imposition of Day's criminal penalty. The factual findings support a single aggravating factor: the vulnerability of the victim. "[A] minimal suspension seems more appropriate in a case where . . . the mitigating factors clearly outweigh any aggravating factors." Halverson, 140 Wash.2d at 497, 998 P.2d 833. However, at least these fairly cancel out any change to the standard sanction.

Conclusion
¶ 87 In our zeal to distance our honorable profession from misconduct we should not disregard the very principles which make our profession honorable. Certainly, Day's conduct is worthy of sanction. He violated a duty he owed to the public, specifically RPC 8.4(i), by committing an unjustifiable act of assault reflecting a disregard for the rule of law. As an act of sexual assault the Standards provide suspension as the appropriate sanction, not disbarment.
¶ 88 Therefore, I dissent.
NOTES
[1] RPC 8.4(b) states that it is misconduct for an attorney to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."
[2] RPC 8.4(i) states that it is misconduct for an attorney to "commit any act involving moral turpitude . . . or any unjustified act of assault or other act which reflects disregard for the rule of law, whether the same be committed in the course of his or her conduct as a lawyer, or otherwise."
[3] Day conceded that the crime of child molestation in the first degree constitutes an unjustified act of assault, but he is currently appealing his conviction and does not admit his guilt. FFCL at ¶¶ 22, 27.
[4] ABA Standards std. 5.11 states:

Disbarment is generally appropriate when:
(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or
(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.
[5] ABA Standards std. 5.12 states, "[s]uspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice."
[6] The commentary to ABA Standards std. 5.12 states, "[l]awyers who engage in criminal conduct other than that described . . . in Standard 5.11 should be suspended in cases where their conduct seriously adversely reflects on their fitness to practice. . . . The most common cases involved lawyers who commit felonies . . . such as the possession of narcotics or sexual assault." (Emphasis added.)
[7] The ABA Standards sets out a list of aggravating and mitigating factors that may be considered at standard 9.2 and standard 9.3.
[8] The WSBA agreed that this mitigating factor applied.
[9] The hearing officer conflated his discussion of the presumptive sanctions for violations of RPC 8.4(b) (criminal acts) and RPC 8.4(i) (acts of moral turpitude). We discuss them separately because we previously held that the hearing officer should determine a presumptive sanction for each ethical violation. In re Disciplinary Proceeding Against Anschell, 149 Wash.2d 484, 502, 69 P.3d 844 (2003).
[10] Former DRA 1.1 stated an attorney could be subject to disciplinary sanctions for:

(a) The commission of any act involving moral turpitude, dishonesty, or corruption, whether the same be committed in the course of his or her conduct as an attorney, or otherwise, and whether the same constitutes a felony or misdemeanor or not; and if the act constitutes a felony or misdemeanor, conviction thereof in a criminal proceeding shall not be a condition precedent to disciplinary action. Upon such conviction, however, the judgment and sentence shall be conclusive evidence at the ensuing disciplinary hearing of the guilt of the respondent attorney of the crime described in the indictment or information, and of his or her violation of the statute upon which it is based. A disciplinary hearing as provided in Rule 3.2 of these rules shall be had to determine, (1) whether moral turpitude was in fact an element of the crime committed by the respondent attorney and, (2) the disciplinary action recommended to result therefrom.
[11] Former RLDs were superseded effective October 1, 2002. Former RLD 1.1(a) was recodified as RPC 8.4(i).
[12] Day also argues that the hearing officer should at least have determined that if the criminal sentence did not apply as a mitigating factor, the aggravating and mitigating factors offset one another and the ABA Standards presumptive sanction of suspension should stand. However, as this court noted in Halverson, "an approximately equal number of aggravating and mitigating factors [does not] necessarily warrant[] a minimal suspension. Rather, a minimal suspension seems more appropriate in a case where there are either no aggravating factors and at least some mitigating factors, or where the mitigating factors clearly outweigh any aggravating factors." 140 Wash.2d at 497, 998 P.2d 833.
[1] Standards std 5.11 states:

Disbarment is generally appropriate when:
(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or
(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.
[2] Standards std 5.12 states, "[s]uspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice."
[3] The commentary to Standards std. 5.12 states, "[l]awyers who engage in criminal conduct other than that described . . . in Standard 5.11 should be suspended in cases where their conduct seriously adversely reflects on their fitness to practice. . . . The most common cases involve[] lawyers who commit felonies . . . such as . . . sexual assault."
[4] The majority states McGrath has not been overruled. Majority at 925. Nevertheless, its reasoning has been called into doubt. Compare McGrath, 98 Wash.2d at 345, 655 P.2d 232 (recognizing disbarment for acts that "`cast a serious reflection on the dignity of the court and on the reputation of the profession'" (quoting HENRY S. DRINKER, LEGAL ETHICS 42-43 (1953)) with Curran, 115 Wash.2d at 768, 801 P.2d 962 (stating "[t]he rule is not concerned with maintaining public confidence in the bar by disciplining lawyers harming the public image of the bar"). To restore McGrath's "reputation of the profession" standard is to ignore the purpose of lawyer discipline. See Haley, 156 Wash.2d at 353, 126 P.3d 1262 ("We must remember that our purpose in disciplining attorneys is to `protect the public and to preserve confidence in the legal system.'") (Alexander, C.J., dissenting) (quoting Curran, 115 Wash.2d at 762, 801 P.2d 962)).
[5] The Standards provides a list of aggravating factors, which include:

(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of victim;
(i) substantial experience in the practice of law;
(j) indifference to making restitution.
Standards std. 9.22. The Standards also provides a list of mitigating factors, which include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical or mental disability or impairment;
(i) delay in disciplinary proceedings;
(j) interim rehabilitation;
(k) imposition of other penalties or sanctions;
(l) remorse;
(m) remoteness of prior offenses.
Standards std. 9.32.
[6] The majority conflates identifying a mitigating factor with weighing a mitigating factor. Our consideration of mitigating and aggravating factors is twofold: (1) identifying the factors and (2) weighing the identified factors together. See, e.g., Cohen, 149 Wash.2d at 339-42, 67 P.3d 1086 (first identifying all the factors then weighing them against one another). However, the majority seems to identify a factor by the weight given to it. This is incorrect; the weight of a mitigating or aggravating factor is independent of its existence. Of course, the majority must undertake this conflated analysis to avoid the obvious, the existence of more mitigating factors than aggravating factors. A more honest, albeit unprincipled, approach would be for the majority to state openly no amount of mitigating factors would change its result.
[7] Attributed to 17th-century jurist John Selden, the "chancellor's foot" is a "symbol of the variability of equitable justice." Black's Law Dictionary 246 (8th ed.2004); see also Lonchar v. Thomas, 517 U.S. 314, 323, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996) ("As Selden pointed out so many years ago, the alternative [to established rules and precedents] is to use each equity chancellor's conscience as a measure of equity, which alternative would be as arbitrary and uncertain as measuring distance by the length of each chancellor's foot. See 1 Joseph Story, Commentaries on Equity Jurisprudence 16 (13th ed. 1886).").